Diane TREPKA, Plaintiff–Appellant,

v.

THE BOARD OF EDUCATION OF THE CLEVELAND CITY SCHOOL DISTRICT, Defendant–Appellee.

No. 00–4063.

United States Court of Appeals, Sixth Circuit.

Jan. 24, 2002.

Before BOGGS and GILMAN, Circuit Judges; and QUIST, District Judge.[*]

[*] Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

PER CURIAM.

Diane Trepka appeals the district court's summary judgment for the Board of Education of the Cleveland City School District ("the Board"), dismissing all her claims arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Because of injuries from a 1991 car accident, Trepka had difficulty climbing stairs and carrying loads. Trepka alleges that she has a qualifying disability under the ADA and that the Board failed to meet the ADA's requirements in dealing with her disability. In short, Trepka claims that the Board and its employees failed reasonably to accommodate her disability, harassed her on the basis of her disability, retaliated against her for filing complaints regarding the Board's lack of accommodation, and discharged her constructively because of her disability. The district court, assuming that Trepka had a qualifying disability, held that the Board's treatment of her did not violate the ADA. For the following reasons, we affirm the district court's grant of summary judgment.

I

In March 1991, Trepka was involved in an automobile accident, resulting in "myofacial pain syndrome." The syndrome causes continuing pain in Trepka's back and neck, and her physicians state that the condition is permanent. According to her physicians, Trepka's condition prevents her from climbing stairs "quickly" and carrying "oversized" loads.

Trepka, at the time of the accident and until her resignation in January 1997, was a special education teacher for the Cleveland City Schools. After a leave of absence due to her injuries, Trepka was assigned to teach an "adaptive management class" for behaviorally disabled students at Adlai Stevenson Elementary School. After telling the Board that her injuries would make it difficult to control disobedient children physically, she was transferred to Marion Seltzer Elementary School and a class of developmentally disabled students.

At Marion Seltzer, the allegedly unaccommodating and abusive conduct that is the basis of this action began. On her very first day, Marion Seltzer's principal, Bonnie Terrell, asked her whether her transfer was "voluntary or involuntary." Trepka was evaluated "more often than usual" by the administration, although each time receiving good to excellent reviews. In March 1996, she took a second medical leave because of her condition. When she returned, the Board reassigned her to another school in the district, but rescinded the reassignment before Trepka started teaching there because the school had no first floor room available for Trepka's class, and a second floor room would challenge her ability to climb stairs.

Before Trepka went on her second medical leave and was temporarily transferred from Marion Seltzer, she was assigned to Room 108 at Marion Seltzer. When Trepka returned to Marion Seltzer, Terrell placed her in Room 104, claiming that Room 108, the largest in the school, was already assigned to an overcrowded kindergarten class. Although Room 104 was also on the first floor, Room 108 was closer to Trepka's car and did not necessitate carrying materials for longer distances. Trepka demanded to be reassigned to Room 108 and rejected Terrell's alternative offers of the assistance of custodial staff or the availability of a cart to carry materials from her car to Room 104.

Terrell and Trepka had several tense verbal interactions during her time at Marion Seltzer. On one occasion, Terrell made several comments about Trepka's

ability to walk. Terrell also reprimanded Trepka and another teacher for having a verbal altercation in the presence of students. On yet another occasion, Terrell asked Trepka to sit on the floor with her students at a school assembly.

In January 1997, Trepka resigned, claiming that her disability made it impossible to work under the conditions set by Terrell and the Board. After filing two complaints with the Ohio Civil Rights Commission, Trepka filed the complaint in this action in January 1996, before she had resigned her teaching position. After several amendments to her complaint, the Board moved for summary judgment in January 1998. The district court granted the Board's motion for summary judgment. According to the district court, there was a genuine issue of material fact at least as to whether Trepka had a "disability" as defined by the ADA. Nevertheless, the district court held that Trepka had demonstrated no genuine issue of material fact as to whether the Board had failed reasonably to accommodate her disability, whether she had been harassed or retaliated against because of her disability or her requests for accommodation, or whether she had been constructively discharged.

Trepka now appeals the district court's summary judgment dismissing her causes of action.

## II

Trepka argues that the district court erred in granting summary judgment with regard to four categories of claims. First, Trepka contends that she demonstrated a genuine issue of material fact that the Board failed reasonably to accommodate her disability. Second, Trepka argues that Terrell's various comments to and treatment of Trepka establishes a genuine issue of material fact that Trepka was the victim of discriminatory harassment. Third, Trepka claims that there is a genuine issue of material fact as to whether the Board retaliated against Trepka for filing complaints regarding the accommodation of her disability during her tenure with the school district. Finally, Trepka insists that the Board's lack of accommodation and hostile treatment forced her to resign and creates at least a genuine issue of material fact as to whether she was constructively discharged. We consider each of these arguments separately.

### A. Trepka's Accommodation Claim

 Trepka argues that the district court erred in granting summary judgment on her accommodation claims. From her brief, it is difficult to determine the manner in which Trepka thinks the district court erred. We can discern two possible assertions of error. On the first theory, the Board could have reasonably accommodated her disability by placing her in Room 108, which is closer to the parking lot, rather than Room 104. Here, the Board offered two alternative accommodations: a cart or the assistance of custodians to help move materials from her car.

 If an employee has a qualifying disability, the employer is required to provide such reasonable accommodations as will enable her to perform the essential functions of her job. *See* 42 U.S.C. § 12112(b)(5)(A); *Gaines v. Runyon*, 107 F.3d 1171, 1178 (6th Cir.1997). A request for accommodation by an employee or her physician triggers the employer's statutory duty reasonably to accommodate the employee's condition. The employer need not provide the accommodation that the employee requests or prefers. Instead, the employer retains the "ultimate discretion" to choose another effective accommodation, even if less expensive or easier to provide. *Hankins v. The Gap*, 84 F.3d 797, 800–01

(6th Cir.1996). Accordingly, an employee is not entitled to a particular reasonable accommodation if another reasonable accommodation is provided. *Ibid.;* 29 C.F.R. § 1630.9(d) (2001). To prevail, Trepka must demonstrate a genuine issue of material fact with regard not only to her entitlement to her requested accommodation, but also to the inadequacy of the offered alternatives. *See Gaines v. Runyon,* 107 F.3d 1171, 1178 (6th Cir.1997).

Trepka does not appear to offer any evidence regarding the adequacy of the alternatives offered by the Board. Trepka's requested accommodation, her reassignment to Room 108, establishes a baseline of her view of a reasonable accommodation. The only relevant difference between the requested Room 108 and her assigned Room 104 is the distance that Trepka would be required to navigate inside the building from her car. Apparently, Trepka regularly carried teaching materials from her car to her classroom. Her placement in Room 104 increased the distance that those materials would need to be carried.

■ Her physician had previously indicated that Trepka's condition limited her ability to carry loads and to climb stairs. Trepka, however, presented no evidence that her condition limited her ability to walk. Although placement in Room 104 increased the distance that she would need to walk, each of the two offered alternative accommodations, the use of a cart and the assistance of custodial staff, would obviate the need for her to carry loads any further from her car. Indeed, her own physician, in his letter to the school requesting a room reassignment, suggested assistance in carrying her materials as an alternative. Trepka claims that she asked the custodian for assistance once and that he was late in helping her, but we hold that such evidence falls well short of demonstrating that the accommodation was unavailable. Moreover, such a claim indicates very little about the availability or adequacy of the cart. We hold that there is no genuine issue of material fact that these alternatives were offered and available, and were adequate accommodations. Because the ADA does not entitle a disabled employee to insist on one among several reasonable accommodations, we hold that the district court's summary judgment was appropriate on this theory of Trepka's accommodation claim.

■ The second and only other theory of the Board's failure to accommodate is that she was not provided with adequate handicapped parking. According to Trepka, the parking facilities at Marion Seltzer Elementary School did not meet Department of Justice standards for handicapped parking. Insofar as Trepka's cause of action is under only the ADA, she must demonstrate that she required better parking as a reasonable accommodation to *her* physical limitations. One feature of the parking lot to which Trepka was assigned was the need to climb five steps to the door. Although there is evidence that Trepka's condition limited her ability to climb steps, Trepka's physician indicated that it was his recommendation that she climb steps no more than two to three times a day. The parking provided only required Trepka to climb less than a flight of stairs once a day. Absent any evidence of more profound physical limitations arising from her condition, we hold that Trepka has not demonstrated a genuine issue of material fact as to whether her parking needs were reasonably accommodated.

B. Trepka's Hostile Work Environment Claim

■ Trepka argues that the Board and its employees engaged in discriminatory harassment and created a hostile work

environment for her because of her disability. In order to maintain an action for a hostile work environment under the ADA, the employee must demonstrate that: (1) she was disabled; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment unreasonably interfered with her work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures. *See Blankenship v. Parke Care Centers, Inc.,* 123 F.3d 868, 872 (6th Cir.1997) (establishing the framework of proof under Title VII for sexual harassment); *Crawford v. Medina General Hosp.,* 96 F.3d 830, 834 (6th Cir.1996) (holding that the elements of a hostile work environment claim are the same across discrimination contexts and applying those elements specifically to the Age Discrimination in Employment Act). The Supreme Court has elaborated on what type of conduct can constitute harassment and form the basis for a hostile work environment claim. *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To prevail, the employee must show conduct that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and [to] create an abusive working environment." *See ibid.; Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Conduct that is "merely offensive" will not suffice to support a hostile work environment action. *See Harris,* 510 U.S. at 21, 114 S.Ct. 367.

■ This court is able to find only a few instances of conduct alleged here that could even approach harassment. Trepka claims that she was accosted on several occasions by the principal at the Marion Seltzer school, Bonnie Terrell. On September 28, 1995, Terrell had a relatively contentious oral confrontation with Trepka, yelling: "Answer me, Mrs. Trepka. Answer me. You can walk. We all see you walk. You walk these steps every day." In the Winter of 1995, Terrell asked Trepka to knock the snow off her boots before entering the building while "other people were entering with snow on their boots." At an assembly, Terrell asked Trepka and another allegedly "disabled" teacher to sit on the floor with their classes while other teachers were not so asked. When Trepka arrived at Marion Seltzer, Terrell asked her whether her transfer was "voluntary or involuntary." Towards the end of her employment, Trepka says that she pressed a panic buzzer to the principal's office and Terrell failed expeditiously to respond.

The alleged conduct falls well short of even presenting a genuine issue of material fact regarding whether Trepka was subjected to a hostile work environment. Perhaps the strongest instance of conduct is Terrell's stern words about Trepka's ability to walk. At most, however, those words express skepticism regarding Trepka's condition. This single incident of explicit reference to Trepka's disability is not sufficiently severe to constitute harassment under our precedents.

■ With regard to Terrell's other conduct, there is no evidence that it was undertaken "because" of Trepka's disability. Our harassment jurisprudence requires that we distinguish between harassment and discriminatory harassment. *See Bowman v. Shawnee State Univ.,* 220 F.3d 456, 464 (6th Cir.2000). Thus, an employee must demonstrate that the allegedly harassing conduct was motivated by a bias towards the employee's protected class. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 778, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). There is no evidence on the basis of which a reasonable jury could begin to determine that Terrell acted be-

cause of Trepka's disability rather than, for example, that Terrell asked Trepka to sit on the floor once because her developmentally disabled students needed extra attention, or that Terrell asked Trepka to knock the snow off her boots because Terrell did not notice anyone else, or that Terrell did not answer the panic button because she was not in her office, or that Terrell did all of these things because she just did not personally like Trepka. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (holding that harassment motivated by personal dislike for an employee is not actionable under the discrimination laws). To avoid summary judgment, Trepka need not prove Terrell's motivation, but she should at least provide some evidence of discrimination—and we can find none.

Accordingly, we affirm the district court's summary judgment with regard to Trepka's hostile work environment claim.

## C. Trepka's Retaliation Claim

▮ Trepka next contends that she was the victim of prohibited retaliation for filing complaints with the Ohio Civil Rights Commission. *See* 42 U.S.C. § 12203(a) (prohibiting discrimination against any individual for engaging in conduct protected by the ADA, including filing a grievance). To establish an action for retaliation under the ADA, the employee must at least show that she suffered an "adverse employment action." *See Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir.1997). While there are, of course, other elements to a retaliation claim under the ADA, we need not elaborate upon them here as Trepka has not demonstrated a genuine issue of material fact that she suffered an "adverse employment action."

▮ Not every action that the employee dislikes is an "adverse employment action." *See Kocsis v. Multi–Care Man-*

*agement, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). Instead, the employer's conduct must effect a "materially adverse change in the terms and conditions of employment." *Ibid.* For example, reassignments do not constitute adverse employment actions without disadvantageous changes in hours or salary. *See Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir.1987). More generally, courts look for at least a termination of employment, a demotion in wage, salary or job title, a loss of benefits, or a decrease in responsibilities. *See, e.g., Crady v. Liberty National Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993).

▮ Trepka has suffered none of these. Her salary, promotion track, and responsibilities were not diminished by any Board action. Indeed, her job evaluations throughout were either "good" or "excellent." At most, Trepka perceives an attitude of dislike among certain administrators. But such an atmosphere is not even close to the adverse *action* required to constitute retaliation. We therefore affirm the district court's summary judgment on her retaliation claim.

## D. Trepka's Constructive Discharge Claim

▮ Finally, Trepka claims that, although she resigned and was not terminated from her position, she was "constructively discharged" and therefore is entitled to relief. Trepka's incantation of the words "constructive discharge," of course, is not sufficient to establish a cause of action because, absent explicit contractual provisions to the contrary, an employer may explicitly discharge any employee at will. *See, e.g., Wright v. Honda of Am. Mfg., Inc.*, 73 Ohio St.3d 571, 653 N.E.2d 381, 384 (1995) ("In general, under the employment-at-will doctrine, the employment relationship between employer and employee is terminable at the will of ei-

ther; thus, an employee is subject to discharge by an employer at any time, even without cause."). Rather, conduct that forces an employee to quit, constituting "constructive discharge," is actionable only if the conduct is motivated by discriminatory intent against a protected employee characteristic. The discriminatory conduct must then make working conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *See Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 867, 887 (6th Cir.1996).

■ Indeed, simple proof of discrimination is not enough to convert an employee's resignation into an actionable constructive discharge. Instead, there must be, in addition, aggravating factors, constituting at least a continuous and severe pattern of discriminatory treatment. *See Yates v. Avco Corp.,* 819 F.2d 630, 637 (6th Cir.1987).

Consequently, because we have held as to all of her other claims that Trepka has not demonstrated one genuine issue of material fact as to whether she was discriminated against because of her disability, she is far from establishing the "aggravating factors" necessary for a "constructive discharge" action. We therefore affirm the summary judgment of the district court on Trepka's constructive discharge claim.

### III

Having also held that Trepka demonstrated no genuine issue of material fact with regard to her accommodation, hostile work environment and retaliation claims, we AFFIRM the district court's summary judgment in favor of the defendant.