MARTIN, J., delivered the opinion of the court, in which CLAY, J., joined. COLE, J. (pp. 203-05), delivered a separate opinion concurring in the judgment.
OPINION
BOYCE F. MARTIN, JR., Circuit Judge.
Plaintiff-appellant Martin Jakubowski suffers from Asperger’s Disorder[1] and was formerly employed as a family practice medical resident at The Christ Hospital, Inc. in Cincinnati, Ohio. He filed suit against Christ Hospital and the director of his program there, Dr. Philip Diller, after he was terminated from his position. Jakubowski claims that Christ Hospital and Diller terminated him because of his Asperger’s and failed to reasonably accommodate this disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112, the Rehabilitation Act, 29 U.S.C. § 794, and Ohio Revised Code § 4112.02. Christ Hospital and Diller moved for summary judgment, which the district court granted. Jakubowski now appeals. We AFFIRM.
I. BACKGROUND
In 2003, Jakubowski graduated from the University of Medical Sciences in Poznan, Poland. He unsuccessfully attempted to obtain a medical residency in the United States through the “match” process, by which hospitals and residency prospects choose each other. However, he obtained a residency position at St. Elizabeth Hospital in Youngstown, Ohio through the “scramble” process, which allows applicants who were unsuccessful in the match process to find remaining residency positions. In July 2005, he began his residency, but struggled and did not perform well. He was placed in a remediation program in October to improve his areas of weakness, but at the end of his first year, he was informed that St. Elizabeth would not renew his contract for a second year.
Recognizing that his clinical and patient skills were weak compared to graduates of American medical schools, Jakubowski enrolled at the New York Medical College for a year-long program of supervised clinical training. There, he received mixed reviews, with the negative evaluations focused on his lack of communication skills.
After this program, Jakubowski looked for a second residency. He again participated in the match process with no success, but found a residency through the scramble process at Christ Hospital in Cincinnati. He began his residency there *198 in July 2007. During an initial month-long orientation, he again received mixed reviews. While he placed in the ninetieth percentile nationally on a medical knowledge exam, he performed poorly on an emotional intelligence exam, and supervising physicians noted his weak communication skills with patients. Supervisors identified self-awareness, social competence, and relationship management as areas of deficiency for Jakubowski. Additionally, an attending physician, Dr. Jeffrey Morgeson, observed that when working with patients, Jakubowski had poor organizational skills, skipped standard procedures in his examinations, and performed procedures incorrectly.
At the conclusion of orientation, Diller suspected that Jakubowski suffered from a cognitive disorder. Diller referred him to Dr. Linda Hartmann for a psychological evaluation, and specifically to determine if he had Asperger’s. Diller did not make his suspicions known to other attending physicians at Christ Hospital.
During Jakubowski’s first night on call after orientation, he was unable to keep up the necessary pace in seeing patients. His supervising physician had to relieve him, and noted that Jakubowski could not properly relay instructions between healthcare professionals. During the first week of August, one attending physician, Dr. Ellis, criticized his performance and recommended that he be placed on remediation. He noted that Jakubowski had an average to below average medical knowledge, had difficulty exploring possible diagnoses, did not communicate with the nurses well, and had difficulty answering, and communicating on, the phone. Another attending physician, Dr. Bernheisel, remarked that Jakubowski could not be trusted and had given dangerous orders that would have harmed patients if not caught by other physicians. In another instance, Jakubowski wrote an unclear order for medication for a patient that, if interpreted and administered literally, would have killed the patient. Jakubowski never actually harmed a patient during his residency.
On August 8, Hartmann sent a letter to Diller explaining that she suspected that Jakubowski had Asperger’s, but she could not be sure without speaking to Jakubowski’s family about his past.
On August 24, Bernheisel informed Jakubowski that he had failed his inpatient rotation and he would have to repeat it.
On August 25, Hartmann formally diagnosed Jakubowski and informed him that he had Asperger’s. That same day, Jakubowski received a letter from Diller informing him that he would be terminated from his residency on September 30. At that time, Diller had not yet received Hartmann’s letter explaining her potential diagnosis because it had been lost in office mail. Jakubowski met with Diller, Bernheisel, and another attending physician, Dr. Jeffrey Schlaudecker, that same day and informed them that he had been diagnosed with Asperger’s.
On September 11, Jakubowski’s attorney sent a letter to Christ Hospital proposing that it accommodate Jakubowski’s disability with “knowledge and understanding.” The letter explained that Jakubowski could successfully continue his residency if the other physicians and nurses were made aware of his condition and the symptoms and triggers of Asperger’s. Jakubowski conceded he would have to improve his communication skills with patients, but insisted that he could do this alone. The parties then met to discuss the proposed accommodation, at which time Diller informed Jakubowski that Christ Hospital did not have sufficient resources to comply with the proposal. However, Diller offered to assist Jakubowski in finding a *199 residency in pathology, a field that requires little or no patient interaction.
Jakubowski appealed his termination to the graduate medical education committee at Christ Hospital. On December 18, the committee affirmed his termination.
Lynda Geller, Ph.D. presented expert testimony during discovery that there are many ways Christ Hospital could have accommodated Jakubowski’s Asperger’s. She also presented evidence of a remediation program that Christ Hospital had previously offered a struggling resident. The previous resident had difficulty following instructions from other physicians for treatment, adjusting treatment plans as new information was obtained, applying medical knowledge to clinical interactions with patients, and making timely diagnoses. As part of his remediation program, Christ Hospital paused his rotation for four months, assigned an attending physician to monitor him while he saw patients three mornings a week, assigned a medical faculty member to monitor him one morning a week, assigned Bernheisel to work with him and fifteen patients a month, gave him a full day every week to study, and assigned him a personal mentor to improve his medical knowledge. If the resident did not improve in the initial four months, he would be able to continue the remediation for an additional four months. Geller opined that this resident’s shortcomings were similar to Jakubowski’s, and that Christ Hospital could have offered a similar remediation program to Jakubowski. Geller testified that her recommendations had nothing to do with patient safety. She did not purport to have any expertise in patient safety, and had no opinion regarding how Jakubowski’s Asperger’s would affect patient safety. Geller’s testimony and observations regarding the previous resident were not available when Jakubowski and Diller met to discuss accommodations as she was an expert witness obtained later for litigation purposes. Jakubowski did not propose a remediation program as part of his proposed accommodation at the meeting with Diller.
Jakubowski described his condition during discovery, saying that he has trouble communicating his thoughts to people and processing what people communicate to him. He also said he could have trouble gathering data.
A medical expert, Dr. Jeffery Chaudhari, who had previously worked with Jakubowski in New York, testified during discovery for Christ Hospital. He opined that being a physician requires excellent skills in relating to patients and co-workers. He also rated Jakubowski’s performance as “sub-par,” and remembered that Jakubowski had difficulty relating to colleagues and gathering information from a patient and integrating it. Another medical expert who had experience with Jakubowski at St. Elizabeth, Dr. Rudolph Krafft, also testified during discovery for Christ Hospital. He stated that “getting information from patients accurately” is “very important” for a physician, and that a physician would be “unqualified” if he had “no ability” to pick up on the subtleties of human interaction.
Two other physicians at Christ Hospital, Drs. Vasyl and Martin, evaluated Jakubowski with the following descriptions: “clueless, reports data incorrectly, not trusted, has no concept of his patients, leaves out outpatient information, says yes to things but has not done [them], lack of insight, lack of organization, unable to communicate, lack of attention,” and “presents untruth [sic].”
Dr. Donald Swikert, director of the Family Medicine Residency Program at St. Elizabeth, worked with Jakubowski there and also testified during discovery *200 for Christ Hospital. He recalled that Jakubowski exhibited deficiencies that put patients in danger. He also opined that the accommodations recommended by Geller would be unreasonable for the following reasons: (1) “[Christ Hospital] would be responsible for freeing up significant time from educational and patient care training for an indefinite period of time and for an indefinite frequency;” (2) “these recommendations would require significant patient care coverage issues by faculty and residents;” (3) “the recommendations would have a significant adverse impact on the Program, particularly the training of other residents because they would be pulled from their usual responsibilities and educational opportunities;” (4) “the Program would have to free-up significant physician time so as to effectively work with Martin Jakubowski;” (5) “patients would have to be actively recruited who would be willing to participate in such a remediation program;” and (6) “sixty observed patient evaluations and the subsequent analysis, review and work with Martin Jakubowski to address the broad scope of deficiencies would take, at a minimum, months to accomplish and would significantly impact the resources available for the training of other residents in the Program.” Furthermore, Swikert added “that the accommodations proposed by Lynda Geller, Ph.D. and Martin Jakubowski do not consider the significant patient care and patient safety concerns.”
II. STANDARD OF REVIEW
“The Sixth Circuit reviews de novo a district court’s grant of summary judgment.” Hamilton v. Starcom Mediavest Group, Inc., 522 F.3d 623, 627 (6th Cir.2008). “Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.” Fed. R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party has met its burden, the burden shifts to the nonmoving party, who must present some “specific facts showing that there is a genuine issue for trial.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, the district court must view the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
III. DISCUSSION
Jakubowski claims that the district court improperly granted summary judgment in favor of Christ Hospital. Specifically, he argues that the district court erred by: (1) concluding that he was not an “otherwise qualified” individual pursuant to the Disabilities Act, the Rehabilitation Act, and Ohio’s discrimination laws; (2) impermissibly weighing evidence and deciding that the proposed accommodations were not reasonable; (3) finding that no genuine issue of material fact existed as to whether Christ Hospital engaged in a good faith interactive process to accommodate his disability; (4) failing to afford reasonable inferences in his favor and incorrectly concluding that Christ Hospital satisfied its burden of proof regarding the “direct threat” defense; and (5) concluding that the proposed accommodations created an undue hardship. In response, Christ Hospital claims that: (1) no reasonable accommodation existed; (2) Jakubowski’s proposed accommodations posed an undue hardship for Christ Hospital and a direct threat to Jakubowski’s patients; (3) Christ Hospital engaged in the interactive accom *201 modation process in good faith with Jakubowski; (4) Christ Hospital’s decision to terminate Jakubowski was based on his poor performance and patient safety; and (5) Jakubowski’s concealment of his past, failed residencies at other hospitals was reason enough for him to be terminated.
A. The Americans with Disabilities Act
As an initial matter, analysis of claims made pursuant to the Americans with Disabilities Act applies to claims made pursuant to Ohio Revised Code § 4112.02 and the Rehabilitation Act. Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 872 (6th Cir.2007) (citation omitted) (applying Americans with Disabilities Act analysis to claims made pursuant to Ohio Revised Code § 4112.02); Doe v. Woodford Cnty. Bd. of Educ., 213 F.3d 921, 925 (6th Cir.2000) (the Sixth Circuit discusses claims under the American with Disabilities Act and the Rehabilitation Act concurrently “because the purpose, scope, and governing standards of the ‘acts are largely the same, cases construing one statute are instructive in construing the other’ ” (quoting McPherson v. Michigan High School Athletic Ass’n, Inc., 119 F.3d 453, 460 (6th Cir.1997))). Therefore, the following discussion of the Americans with Disabilities Act applies to all of Jakubowski’s claims.
Pursuant to section 12112(a) of the Act, an employer may not discriminatorily terminate an otherwise qualified individual on the basis of his disability. One form of discrimination occurs when an employer fails to make “reasonable accommodations” to an employee’s known disability, unless those accommodations would cause “undue hardship” to the employer. 42 U.S.C. § 12112(b)(5)(A) (2006). “To recover on a claim of discrimination under the Act, a plaintiff must show that: 1) he is an individual with a disability; 2) he is ‘otherwise qualified’ to perform the job requirements, with or without reasonable accommodation; and 3) he was discharged solely by reason of his handicap.” Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1178 (6th Cir.1996).
The district court found that Jakubowski’s Asperger’s was a disability for purposes of the Act. This conclusion is not disputed by Christ Hospital. Therefore, the issues on appeal concern whether Jakubowski was an otherwise qualified individual for purposes of the Act, which, in turn, depends on the interactive accommodation process between him and Christ Hospital.
B. Reasonable Accommodations and Otherwise Qualified Individuals
Jakubowski claims the district court erred by concluding that he was not an “otherwise qualified” individual. “The term ‘qualified individual’ means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.” 42 U.S.C. § 12111(8) (2008). Essential functions are “fundamental job duties of the employment position the individual with a disability holds.” 29 C.F.R. § 1630.2(n)(1) (2010). “[Cjonsideration shall be given to the employer’s judgment as to what functions of a job are essential....” Id.
Christ Hospital identified communicating with professional colleagues and patients in ways that ensure patient safety as an essential function that Jakubowski must be able to perform. Based on the uncontroverted evidence in the record, it appears that many healthcare professionals work together to care for a single patient. The ultimate success of that care requires the patient, physicians, nurses, and technicians to communicate clearly with each other, or else, patients could be harmed or even die. Furthermore, as the employer, *202 Christ Hospital’s identification of these functions as essential should be given some consideration. See 42 U.S.C. § 12111(8). Accordingly, we agree that there is no dispute that these functions are essential to the work of a family practice physician residency training program. Because Jakubowski admittedly had difficulty performing these functions, some kind of accommodations would be necessary for him to continue his work. See id. § 12112(b)(5)(A). Thus, whether Jakubowski was a qualified individual depends on whether he proposed a reasonable accommodation to account for his disability.
C. Jakubowski’s Proposed Accommodations and the Essential Functions of His Position
If a disabled employee requires an accommodation, the employee is saddled with the burden of proposing an accommodation and proving that it is reasonable. Monette, 90 F.3d at 1183. Furthermore, the plaintiff has the burden of proving that he will be “capable of performing the essential functions of the job with the proposed accommodation.” Id. at 1184. Reasonable accommodations may include
making existing facilities used by employees readily accessible to and usable by individuals with disabilities, job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.
42 U.S.C. § 12111(9).
The accommodations that Jakubowski proposed were for “knowledge and understanding” of the hospital physicians and staff. He argued that he would be capable of communicating with them effectively if they knew of his condition and its symptoms and triggers. However, he did not address how this accommodation would improve his communication and interaction with patients, which are parts of the essential function of a family practice resident. Instead, he explained that he would work individually to improve his clinical skills with patients without going into detail as to how he would accomplish this feat. A physician must be able to talk to patients, discern their ailments, and describe treatments to them. Jakubowski’s performance evaluations often rated his abilities to communicate with patients and gather information from them as deficient. Because the accommodations' — that Jakubowski had the burden to propose — do not address a key obstacle preventing him from performing a necessary function of a medical resident, he has not met his burden under the Act of proving he is an otherwise qualified individual for the position. See Monette, 90 F.3d at 1184.
D. The Interactive Accommodation Process
“To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee].” 29 C.F.R. § 1630.2(o )(3) (2010). “This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.” Id. Both parties must participate in this process and do so in good faith. Kleiber, 485 F.3d at 871. Parties should not obstruct the process, or refuse to participate. Id. An employee has the burden of proposing an initial accommodation, and the employer has the burden of showing how the accommodation would cause an undue *203 hardship, but the employer is not required to propose a counter accommodation in order to participate in the interactive process in good faith. See, e.g., Talley v. Family Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1108, 1110 (6th Cir.2008) (discussing the interactive process but not requiring that the employer make a counter proposal after rejecting the employee’s proposed accommodations). Of course, taking the extra step of proposing counter accommodations may be additional evidence of good faith. See Kleiber, 485 F.3d at 872 (noting that the employer’s visits to the manufacturing line to try to identify appropriate jobs for the employee was evidence of participating in the interactive process in good faith). If an employer takes that step and offers a reasonable counter accommodation, the employee cannot demand a different accommodation. Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 457 (6th Cir.2004). An employer has sufficiently acted in good faith when it readily meets with the employee, discusses any reasonable accommodations, and suggests other possible positions for the plaintiff. See Nance v. Goodyear Tire & Rubber Co., 527 F.3d 539, 557 (6th Cir.2008).
Jakubowski contends that Christ Hospital did not act in good faith because it did not offer him a remediation program similar to the one offered to the previous, unnamed resident who exhibited similar deficiencies. Importantly, Jakubowski did not request a remediation program at the accommodation meeting with Christ Hospital. Only as part of this litigation did he contend that Christ Hospital should have volunteered this option.
Christ Hospital, through Diller, met with Jakubowski to discuss his proposed accommodations, and told him that the hospital lacked sufficient resources to comply. Diller also offered to help him find a pathology residency because it would involve less patient contact, thus, accommodating what Diller saw as one of Jakubowski’s weaknesses. Because Christ Hospital met with Jakubowski, considered his proposed accommodations, informed him why they were unreasonable, offered assistance in finding a new pathology residency, and never hindered the process along the way, we agree that there is no dispute that Christ Hospital participated in the interactive accommodation process in good faith.
IV. CONCLUSION
Jakubowski’s Asperger’s causes symptoms that are, in the very least, less than ideal for the successful practice of medicine. Because of his disorder, he has extreme difficulty communicating with colleagues and patients. This difficulty has led to dangerous possibilities in the past, and multiple physicians that have worked with him professionally have noted his shortcomings. Although he proposed accommodations to help him overcome his disability, they did not address every essential function that a resident must be able to perform. Additionally, it appears that Christ Hospital acted in good faith throughout the interactive accommodation process, thereby fulfilling its duty. Therefore, we AFFIRM the district court’s grant of summary judgment in favor of Christ Hospital and Diller.

. Asperger's Disorder is characterized by “severe and sustained impairment in social interaction ... and the development of restricted, repetitive patterns of behavior, interests, and activities.” American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 80 (4th ed. 2000). "The disturbance must cause clinically significant impairment in social, occupational, or other important areas of functioning....” Id. "The impairment in reciprocal social interaction is gross and sustained. There may be marked impairment in the use of multiple nonverbal behaviors ... to regulate social interaction and communication....” Id.