NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0337n.06

Case No. 23-5815

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Aug 01, 2024

KELLY L. STEPHENS, Clerk

| | |
|---|---|
| HAROLD C. SMITH, | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| SHELBY COUNTY BOARD OF EDUCATION, | ) |
| Defendant-Appellee. | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

O P I N I O N

Before: LARSEN, READLER, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Plaintiff-Appellant, Dr. Harold C. Smith is an educator who worked for the Shelby County Board of Education ("SCBE") public school system for 27 years. When the SCBE mandated on-site, in-person instruction following the end of certain pandemic-related restrictions in 2021, Smith did not return to the classroom. Due to his immunocompromised status, Smith instead proposed to the SCBE that he continue virtual instruction of his classes from his home. The SCBE countered Smith's proposal with two options that would have permitted extended remote instruction. But both options still would have required Smith to teach his classes on-site at school—just from isolated locations. Smith rejected the counterproposals, rebuffed entreaties to appear for on-site instruction, and eventually resigned his position. He later sued the SCBE for disability discrimination. Concluding that Smith caused the

breakdown in the interactive process, the district court granted summary judgment in the SCBE's favor. We agree and affirm.

**I.**

From 1994 through 2021, Smith held various teaching and administrative positions at the SCBE schools (formerly known as Memphis City Schools). For the 2020-2021 school year, the SCBE assigned Smith to teach science at Gordon Achievement Academy School ("Gordon")—an alternative school designed to give its students "a second chance for better opportunities." (R. 33, PageID 96). In early March 2020, the COVID-19 pandemic led the SCBE to shutter its schools and transition its educators to virtual instruction from their homes. Shortly before the 2020-2021 school year began, Smith took leave under the Family Medical Leave Act ("FMLA") to undergo heart and kidney transplant surgeries. About six months later, medical providers from Smith's transplant recovery team provided a letter releasing him to return to work. The January 12, 2021, letter explained that "[w]hile working virtually would be the safest option for [Smith] given his immunosuppressed status," the SCBE should discuss with his doctor and Smith whether "he would be required to return to work in person." (R. 39, PageID 344; R. 62-1, PageID 486, ¶ 17). Smith had informed his medical providers that he could work virtually, but the letter nonetheless included precautions to be taken should he be required to be in the presence of others. Specifically, the letter stated that Smith should "wear a mask when interacting with individuals and practice recommended social distancing guidelines and COVID precautions." (R. 39, PageID 344).

Once Smith completed his FMLA leave, he worked remotely in accordance with the SCBE's policy for all teachers at that time. Within a month of his return, however, the SCBE informed its employees and students that in-person instruction would resume on March 1, 2021. Smith promptly requested to continue to teach his classes remotely due to his health status.

In support of his request, he proffered a second letter from his medical providers both "recommend[ing]" and "request[ing]" that he be permitted to "work from home in a virtual capacity until at least one year post transplant," or until July 2021. (R. 41, PageID 364).

In a March 2, 2021, e-mail, Gordon's principal, Leviticus Pointer, acknowledged Smith's accommodation request, noted the SCBE's proposal of two on-site accommodation options as well as a possible leave of absence, and recommended that Smith contact the SCBE's Advisor in the Office of Professional Standards, Lauren Prater. As for the two options Pointer referenced, "Plan A" would have permitted Smith to teach remotely from his classroom using virtual learning technology, while his students observed from a nearby computer lab with an educational assistant present. "Plan B" provided the same virtual instruction option as Plan A except that it allowed Smith to instruct from the gymnasium, which had a private restroom and an isolated entrance. Together, Pointer and Prater informed Smith that working from home was not a reasonable accommodation and that the SCBE expected all employees to perform their duties "onsite and in-person." (R. 33, PageID 107). Pointer and Prater also discussed with Smith the possibility of requesting additional leave of absence.

Smith turned down these options, preferring his previously requested work-from-home proposal instead. He thus did not return to the school building. Pointer followed up with Smith regarding his return to work and reiterated that the SCBE was unable to grant his requested accommodation. Pointer also explained to Smith that if he was unable to report in-person to work, he should follow the SCBE's protocol for sick leave and reporting absences. Smith did not report in person after that or utilize the sick leave protocol. As a result, the SCBE's Office of Professional Standards ("OPS") launched an investigation. The investigation determined that Smith had refused to return to the school building; that the SCBE had made various adjustments to the school

building to accommodate Smith's medical needs; that Smith had attempted to log onto Microsoft Teams to virtually teach his classes; and that the SCBE had suspended Smith's access to Microsoft Teams to prevent him from attempting to work remotely. These results led the SCBE to issue a Notice Letter advising Smith of the possibility of major discipline, up to and including termination, for violating its policies. A few weeks later, the SCBE held a misconduct hearing, during which Smith admitted his refusal to return to work on-site after his initial accommodation request was denied nearly a month earlier.

The OPS determined that Smith violated two of its official policies: an ethics policy[1] requiring employees to adhere to all policies and administrative rules; and a time-reporting policy[2] requiring employees to report to work at the time designated by their principal. The OPS made a formal recommendation to the SCBE's superintendent to suspend Smith without pay for three days. The superintendent adopted the OPS's findings and confirmed Smith's three-day suspension. The SCBE also suspended Smith's access to its network and computer systems.[3] Smith suggests that he also asked to be considered for a different position that did not require him to report in-person to Gordon, but it is unclear from the record whether and when any such request

---

[1] Policy Number 4002 – Staff Ethics

[2] Policy Number 4036 – Reporting Time

[3] Smith asserted below that the SCBE constructively discharged him when it suspended his access to its network and computer systems. But he does no more than intimate this argument in his opening brief, mentioning it only once without any meaningful development. (ECF 30, Appellant's Br. 18). Such "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). Nor does Smith's effort to develop the argument in reply help his cause. For this court has long observed that issues raised for the first time in a reply brief are waived. *See, e.g.*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

may have been made.[4] Following Smith's suspension, he ceased communications with the SCBE and did not return to work.

*Procedural History.* On January 6, 2022, Smith filed this suit, alleging discrimination based on a failure to accommodate his disability under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117. The SCBE subsequently moved for summary judgment, arguing, in part, that in-person attendance was an essential function of Smith's job and that he failed to engage in the interactive process when he rejected the SCBE's reasonable accommodations and cut off communications. The district court denied the SCBE's motion, finding that there was a genuine dispute of material fact as to whether in-person instruction was an essential function of the job and declining to address the SCBE's interactive-process argument. The SCBE filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure Rule 54(b) and Local Rule 7.3(b) of the United States District Court for the Western District of Tennessee Local Rules. In its motion, the SCBE argued that the district court overlooked the dispositive issue of whether Smith's cessation of communications during the interactive process rendered him an unqualified individual under the ADA. Smith opposed the motion to reconsider but did not address whether or how the SCBE's motion failed to satisfy Local Rule 7.3. Concluding that Smith did fail to properly engage in the interactive process and that this failing was dispositive, the district court granted the SCBE's motions for reconsideration and for summary judgment. Smith timely appealed.

---

[4] Smith directs the court to his complaint, (R. 1, ¶¶ 23–25), for support. However, allegations made in an unverified complaint are not considered evidence for purposes of summary judgment. *See King v. Harwood*, 852 F.3d 568, 577–78 (6th Cir. 2017). And without evidence that he notified the SCBE that he desired such a transfer or that there were any suitable positions available, such a claim does not help him. *See Cooper v. Dolgencorp, LLC*, 93 F.4th 360, 372 (6th Cir. 2024) (discussing the extent of an employer's responsibility to identify suitable alternative positions when a plaintiff requests transfer as an accommodation).

**II.**

We review a district court's summary judgment ruling de novo, construing the facts in the light most favorable to the non-moving party. *See Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020). Summary judgment is proper when no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The central issue is whether the evidence presents a sufficient disagreement to require submission of Smith's claims to a jury or whether the evidence is so one-sided that the SCBE must prevail as a matter of law. *See id.* at 251–52. Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Rule 56(e)). A non-movant can establish the existence of such specific facts through "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in the record. *Anderson*, 477 U.S. at 247.

We also apply de novo review to a district court's grant of a motion for reconsideration. *See Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006). Because we utilize "the same standard of review that the district court was required to apply" for motions for reconsideration, we consider whether the district court's decision to grant reconsideration of its earlier summary judgment ruling satisfied Local Rule 7.3. *Id.*

**III.**

Smith raises two principal and related arguments as to why the SCBE was not entitled to summary judgment: (1) the SCBE's proposed accommodations were unreasonable under the ADA

and therefore raised a genuine issue of material fact as to whether the SCBE engaged in the interactive process in good faith; while (2) he fulfilled his responsibility to participate in the interactive process and satisfied his burden of proposing a reasonable accommodation. The SCBE, on the other hand, insists that Smith cannot demonstrate that he met his obligation to engage in the interactive process and that this failing is dispositive of his claim. We agree.

*Failure to Accommodate*. The ADA prohibits discrimination against a "qualified individual" based on disability. 42 U.S.C. § 12112(a). In that regard, "an employer's failure to grant a reasonable accommodation to a disabled employee falls under the ADA's definition of discrimination." *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020). We employ a multi-part test to analyze an employee's claim that an employer failed to reasonably accommodate a disability. Under this test, which utilizes the "direct" method of proof, a "plaintiff must show (1) that [he] is an individual with a disability, and (2) that [he] is otherwise qualified for [his] job despite the disability '(a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation.'" *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018) (quoting *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016), *abrogated in part on other grounds by Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308 (6th Cir. 2019)). Stated another way, an employee seeking to demonstrate that he is "otherwise qualified" under the second prong, must demonstrate that he "can perform the essential functions of a job with or without accommodation." *Id*. at 854. Yet, this showing only gets an employee so far. For entitlement to relief also requires good faith engagement in the interactive process. And good faith requires the consideration of "reasonable accommodations"—the proposal of a reasonable accommodation by the employee and appropriate consideration of that proposal by the employer. *See Tchankpa*, 951 F.3d at 812

(discussing employer's responsibility to consider multiple factors in assessing an employee's request for accommodation). An employee's premature withdrawal from the process can result in a failure to identify a reasonable accommodation and defeat the employee's claim that he is otherwise qualified for the job. *See id.* at 814 (identifying employee's resignation before parties agreed on ultimate accommodation as independent shortcoming defeating employee's claim); *see also E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 766 (6th Cir. 2015) (en banc) (concluding that employee was at fault for breakdown in interactive process when she rejected two of her employer's proposed accommodations in favor of her already rejected-accommodation); *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) (discussing employee's ongoing responsibility to engage employer in assessing fault for breakdown of interactive process).

As an initial matter, "the employee bears the burden of proposing an accommodation that will permit [him] to effectively perform the essential functions of [his] job." *Ford Motor Co.*, 782 F.3d at 763. (emphasis omitted). Employers who receive disability accommodation requests must then consider: "(1) the particular job involved, its purpose, and its essential functions; (2) the employee's limitations and how those limitations can be overcome; (3) the effectiveness an accommodation would have in enabling the individual to perform the job; and (4) the preference of the employee." *Tchankpa*, 951 F.3d at 812 (citation omitted).

As noted, Smith proposed that he continue to teach his classes from his home using the remote capabilities that the SCBE had deployed during COVID restrictions. Smith expends a good deal of energy arguing that his proposed accommodation was reasonable—that in-person, on-site instruction was not an essential element of his job and the SCBE's alternative accommodations were not reasonable. Smith maintains that his doctor's note purportedly ordering him to "remain remote" for a year satisfied his burden to demonstrate reasonableness and that the onus then shifted

to the SCBE to prove that in-person instruction would cause the SCBE undue hardship. But the reasonableness of an employee's proposed accommodation alone is not dispositive. Indeed, "[w]here there is more than one reasonable accommodation, the choice of accommodation is the employer's." *Smith v. Honda of Am. Mfg.*, 101 F. App'x 20, 25 (6th Cir. 2004); s*ee also Hankins v. The Gap, Inc.*, 84 F.3d 797, 800–01 (6th Cir. 1996). And, here, the SCBE responded to Smith's request with alternatives to his proposed accommodation which took into consideration the restrictions communicated by Smith's doctors. Thus, even accepting that Smith's proposed accommodation met the reasonableness requirement, Smith remained obligated to continue on with the interactive process, absent a showing that the SCBE acted in bad faith. On that score, the SCBE argues that Smith's withdrawal from the interactive process defeats his claim.

*Withdrawal from the Interactive Process*. The purpose of the interactive process is to "identify the precise limitations resulting from [the employee's] disability" and any "potential reasonable accommodations that could overcome those limitations." *Kleiber*, 485 F.3d at 871 (quoting 29 C.F.R. § 1630.2(o)(3)). This process is mandatory, and "both parties have a duty to participate in good faith." *Id*. Once the employee "establishes a prima facie showing that he proposed a reasonable accommodation," *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014), "the employer has the burden of showing how the accommodation would cause an undue hardship," *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202–03 (6th Cir. 2010). Should a party "fail[] to participate in good faith," courts should "attempt to isolate the cause of the breakdown" and assign fault to the responsible party. *Kleiber*, 485 F.3d at 871 (quoting *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996)).

Courts have held that employers who take "an active, good-faith role in the interactive process" are not liable under the ADA if their employee "refuses to participate." *EEOC v. Sears,*

*Roebuck & Co.*, 417 F.3d 789, 806 (7th Cir. 2005). And we will typically credit an employer with satisfying the "good faith" requirement when the employer "readily meets with the employee, discusses any reasonable accommodations, and suggests other possible positions for the plaintiff." *Jakubowski*, 627 F.3d at 203. Moreover, as mentioned above, "[i]f an employer takes that step and offers a reasonable counter accommodation, the employee cannot demand a different accommodation." *Id*. (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004)). There is ample evidence in the record here that the SCBE acted in good faith in its interactions with Smith. Pointer and Prater had multiple communications with Smith, followed up with proposals attempting to respond to Smith's health needs, and continued to explore options even after Smith's suspension. The SCBE's good faith participation in the interactive process came with ramifications for Smith: "if an individual rejects [an employer's] reasonable accommodation, the individual will no longer be considered a qualified individual with a disability" under the ADA. *Hedrick*, 355 F.3d at 457; *see also Ford Motor Co.*, 782 F.3d at 766; *Hargett v. Jefferson Cnty. Bd. of Educ.*, No. 17-5368, 2017 WL 5664922, at *4–5 (6th Cir. Oct. 27, 2017) (teacher who rejected school board's proposed accommodation for her problems with ambulation in favor of her own previously rejected proposal deemed unqualified); 29 C.F.R. § 1630.9(d).

Smith's argument, then, that he fulfilled his obligation to the process and the SCBE did not fails. First, the SCBE was not bound by Smith's proposal. *See Tchankpa*, 951 F.3d at 812. The SCBE took into account the effectiveness that Smith's proposed accommodation would have in enabling him to perform the job, explaining that remote environments decrease student learning and the ability to conduct effective supervision. Smith agreed that virtual instruction was not in his student's best interests and that working virtually stymied his ability to perform hands-on work even though he considers himself a "hands-on educator." (R. 38, PageID 305, 310–11).

To ameliorate this problem, the SCBE required its teachers to return to in-person or on-site instruction. For these reasons, the SCBE offered Smith two accommodations that would have served his health need for social isolation while allowing him to continue teaching at Gordon. The first accommodation allowed Smith to attend on-site and teach his students remotely while isolated in his classroom. The second accommodation likewise permitted Smith to be physically present at Gordon and to instruct classes remotely while isolated in the gymnasium. The SCBE also discussed with Smith the possibility of requesting an additional leave of absence. *See Walsh v. United Parcel Serv.*, 201 F.3d 718, 726 (6th Cir. 2000) (recognizing that "medical leave of absence can constitute a reasonable accommodation under appropriate circumstances").

Smith contends that the SCBE's proposed accommodations were inadequate to accommodate his disability, and he seems to suggest that the SCBE made these proposals in bad faith given his "requirement" to work from home. But his assertions are conclusory; Smith "does not appear to offer any evidence" undermining the "adequacy of the alternatives offered" by the SCBE or indicating that he was required to work from home. *See Trepka v. Bd. of Educ.*, 28 F. App'x 455, 460 (6th Cir. 2002). For example, the letters from Smith's medical team never stated that he was required to work from home. *See Tchankpa*, 951 F.3d at 813 (noting that reasonableness under the ADA requires disabled employee's requested accommodations to be "necessary" considering employee's "physical limitations").[5] While Smith's transplant team's letters recommend remote work, the SCBE's counterproposals focusing on Smith's isolation from others appear to reasonably address these concerns in a manner similar to Smith's own proposal.

---

[5] That the medical team was recommending work-from-home rather than establishing it as a requirement is substantiated by the fact that his transplant team's January 12 letter to the SCBE listed specific precautions to be employed for his immunological protection if the SCBE required in-person attendance. These precautions, unlike the recommendation that he work from home, were stated as musts.

Indeed, Smith "concede[d] that he could perform his job functions with the proposed accommodations." (R. 75, PageID 552). True, Smith asserted in his deposition testimony that the proposed accommodations were not as isolated or as clean as the SCBE suggested. But the record evidence does not suggest that his condition required total isolation, and these concerns were precisely the details Smith might have resolved through the interactive process had he not ended communications.

Moreover, SCBE's multiple proposed accommodations demonstrate its "willingness to engage in [the] interactive process," and also suggest that the SCBE was eager to discuss the particulars of its proposals. *See Ford Motor Co.*, 782 F.3d at 766; *Hargett*, 2017 WL 5664922 at *4. The SCBE invited Smith's input regarding its proposals and appeared committed to retaining Smith even if they could not immediately agree on a temporary accommodation. This much is apparent from the SCBE's monthslong communications and investigation into Smith's situation that provided Smith with multiple opportunities to participate in the interactive process. Smith, on the other hand, declined to follow SCBE's protocol for requesting sick leave and reporting absences even after Pointer's prompting. And after rejecting the SCBE's proposal, Smith did not follow up with the SCBE prior to or following his misconduct hearing. Indeed, Smith's only participation was his attendance and admissions during the hearing, where he informed the SCBE that he would not return to work on-site because it denied his initial accommodation request.

Smith chose silence over working with the SCBE to find a meaningful solution that would reconcile his health-related limitations with the SCBE's in-person or on-site requirements. Considering that the SCBE readily met with Smith and crafted possible accommodations that took into account the health risk at the heart of Smith's request, the SCBE cannot now be held responsible for Smith's withdrawal from the process. Smith received two counterproposals,

declined them, and then shut down further communications with the SCBE. He, therefore, bears responsibility for the breakdown in the interactive process and has forfeited his "otherwise qualified" status under the ADA. *See Hedrick*, 355 F.3d at 457; *see also Ford Motor Co.*, 782 F.3d at 766; *Hargett*, 2017 WL 5664922 at *4.

*Motion For Reconsideration.* Smith also challenges the district court's decision to reconsider its earlier ruling which had gone in his favor. In the Western District of Tennessee, reconsidering an interlocutory order is appropriate when, pursuant to Fed. R. Civ. P. 54(b) and Local Rule 7.3(b), the movant shows "a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order." *Biel Loanco III-A, LLC v. Labry*, 862 F. Supp. 2d 766, 787 (W.D. Tenn. 2012) (quoting L.R. 7.3(b)); *see also Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Here, the SCBE argued below that the district court had overlooked its dispositive argument regarding Smith's failure to engage in the interactive process. The district court agreed and took up the issue on reconsideration. We note that the court had, in fact, failed to consider a dispositive argument. Smith offers no argument to the contrary. Nor does he suggest that the SCBE's motion otherwise violated Local Rule 7.3(b) or that the district court applied the wrong standard in deciding whether to reconsider its prior order. Likewise, in his district court briefing, Smith failed to argue whether the SCBE's motion for reconsideration met the standard for granting such motions under Local Rule 7.3(b). As such, he has forfeited any such argument on appeal. *See Scottsdale Ins. Co.*, 513 F.3d at 553. And even if not forfeited, Smith has failed to demonstrate that the district court acted improperly in granting the motion.

## IV.

For the foregoing reasons, we **AFFIRM**.