RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0130p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LAFAWN CARTER,

                    *Plaintiff-Appellant,*

        *v.*

FORD MOTOR COMPANY,

                    *Defendant-Appellee.*

No. 08-1082

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-15285—Bernard A. Friedman, District Judge.

Argued: January 21, 2009

Decided and Filed: April 2, 2009

Before: MARTIN and COOK, Circuit Judges; WATSON, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** James W. Fraser, FAUPEL, FRASER & FESSLER, Ann Arbor, Michigan, for Appellant. Kathryn S. Wood, DICKINSON WRIGHT, Detroit, Michigan, for Appellee. **ON BRIEF:** James W. Fraser, FAUPEL, FRASER & FESSLER, Ann Arbor, Michigan, for Appellant. Kathryn S. Wood, Tiffany Angeleen Buckley, DICKINSON WRIGHT, Detroit, Michigan, for Appellee.

_____

**OPINION**

_____

      BOYCE F. MARTIN, JR., Circuit Judge. Defendant Ford Motor Company fired LaFawn Carter in March 2005 when she did not report to work and, in Ford's view, had not properly extended her medical leave. Carter filed a grievance and Ford agreed to

---

     [*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

reinstate her, but only as a probationary employee. In January 2006, Ford fired Carter after she was involved in a physical altercation with Ford's labor relations supervisor. Carter then sued Ford, alleging sex discrimination and violations of the Family Medical Leave Act. The district court granted summary judgment in Ford's favor on all counts. Carter's appeal focuses only on her March 2005 termination, and contends that the district court erroneously concluded that her complaint did not encompass the 2005 termination. We disagree and AFFIRM the district court's judgment.

I.

From 2001 until 2006, LaFawn Carter worked as an assembler at Automotive Components Holdings, a Ford Motor Company affiliate. In February 2005, while Carter was visiting her co-worker and ex-boyfriend, Corey Thrower, she tore a ligament in her knee. She wanted time to recover, so she called Ford's medical department and requested medical leave. Ford's medical department placed her on a two-week conditional medical leave and instructed her to submit a medical certification form within two weeks. But at the end of the two weeks, Carter neither returned to work nor submitted the medical certification. So, on March 10, Ford sent Carter a notice informing Carter that she would be fired within five days if she did not: (1) report in person to the medical department; or (2) mail Ford a medical certification form completed by her physician; or (3) "telephone to inform the Company of [her] condition." The notice instructed, "If you respond by telephone, request a call-in number." It was signed by Shonn Colbrunn, the plant's human resources specialist, and it provided two phone numbers at the bottom.

On March 15 (within five days), Carter left a message for Colbrunn. According to Colbrunn, he "instructed her to call Medical to extend her leave after she mentioned that she would continue to be out for medical reasons." The parties disagree about whether Carter's conversation with Colbrunn was enough, without a separate call to "Medical," to extend her leave. Ford thought it was not, and fired Carter on March 18 for failing to extend her medical leave. Three days later, she provided Ford with a medical certification signed by a physician and dated March 7.

After she was fired, Carter filed a grievance. Ford's labor relations supervisor, Sabrina Griffin, agreed to rehire Carter if she would sign a reinstatement waiver providing that she could be discharged for any misconduct or violation of the rules within twelve months of her return to work. Carter signed the waiver on April 27, but she remained on medical leave until December 2.

Carter's return to work did not go smoothly: she twice complained that co-workers (including Thrower) sexually harassed her, and that on a separate occasion, a co-worker threw an assembly part at her. Ford investigated these incidents and the labor relations supervisor, Griffin, held a meeting with employees to discuss the plant's rules on sexual harassment and horseplay. As the meeting ended, there was some sort of physical collision between Carter and Griffin—Carter says she "bumped" Griffin; Griffin says the bump was "quite hard" and in response to her statement to Carter that, "I'm going to assume you did that by accident," Carter replied, "Apparently not. You felt it, didn't you?" Colbrunn investigated the incident, interviewed Griffin and Carter, and then recommended that Ford fire Carter.

Carter did not report to work on the day after the altercation with Griffin. She says that instead she phoned the medical department to request medical leave. Ford has no record of the call and does not agree that Carter phoned the medical department. In any event, the next day, January 27, 2006, Ford fired Carter—an action which, as a probationary employee, Carter had no right to challenge through a grievance.

Thus, Carter filed a complaint in district court, alleging three counts of Title VII violations and one count of a Family Medical Leave Act violation. Ford moved for summary judgment on the ground that Carter was not covered by the Family Medical Leave Act in January 2006 because she had not worked the statutory minimum number of hours in the preceding twelve months. Instead of defending her claim relating to the 2006 firing (which she concedes was "effectively waived"), Carter responded that her Family Medical Leave Act claim was based on her 2005 termination and probationary reinstatement.

Carter's focus at the summary judgment stage on those 2005 events was inconsistent with the deposition testimony she had given three months earlier explaining that her lawsuit was only about her January 2006 termination:

> Q: Is anything that happened prior to you returning to work in December 2005, any events that happened prior to that[,] part of the lawsuit that you are bringing against Ford today?
> A: Anything that happened?
>
> Q: Mm-hmm.
> A: No, not—no.
> . . .
>
> Q: Okay. If you know, is your FMLA, Family Medical Leave Act, claim related to your request for the two weeks off right before you were terminated [in January 2006]? Is that what you are claiming is violating the Family Medical Leave Act?
> A: I believe so, yes.
>
> Q: Is there any other way you believe that Ford violated the Family Medical Leave Act as to you?
> A: No, ma'am.

Ford, surprised to learn at the summary judgment stage that Carter's claim involved the 2005 termination, replied by describing a claim based on that event as a "new cause of action"—not indicated by her complaint and directly contradicting her deposition testimony. After Ford filed its reply brief, Carter attempted to file an affidavit supplementing her deposition testimony (styling it as an attachment to her response to motion for summary judgment), that purported to explain why, since her deposition, she had come to believe that her Family Medical Leave Act claim included the early 2005 events. The district court struck it from the record on the ground that it was an impermissible sur-reply and did not comply procedurally with Local Rule 7.1(f) for filing supporting documents and briefs.

Granting summary judgment in Ford's favor, the district court observed, "Plaintiff also testified in her deposition that the above-described events of 2005 during which she took FMLA leave, and was fired, and was later reinstated are not part of the

present Complaint." Thus, the court did not reach the merits of her FMLA claim based on the 2005 events. Carter now appeals.

## II.

The district did not consider a claim arising out of Carter's 2005 termination to be part of Carter's complaint based on "her deposition." *Carter v. Ford Motor Co.*, 2007 WL 4326944 *2 (E.D. Mich. Dec. 10, 2007). Thus, the court determined the scope of Carter's claims not by reference to the language of her complaint, but by how she described her case in her deposition. Nonetheless, the court's evaluation of the scope of Carter's claims amounts to a decision of the sufficiency of a pleading, which is a question of law that we review de novo. *See Minadeo v. ICI Paints*, 398 F.3d 751, 756 (6th Cir. 2005).

## III.

### A. Carter's Complaint

The issue in a challenge to the sufficiency of a pleading is notice. We begin with the first formal notice of Carter's lawsuit—her complaint. The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *E.E.O.C. v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A court must construe pleadings "so as to do justice," Fed. R. Civ. P. 8(e), and "liberally in order to prevent errors in draftsmanship from barring justice to litigants." *Ritchie v. United Mine Workers of Am.*, 410 F.2d 827, 833 (6th Cir. 1969). In other contexts, where language in a complaint is ambiguous, this Court has used a "course of the proceedings test" to determine whether defendants have received notice of the plaintiff's claims. *See, e.g., Harris v. Bornhorst*, 513 F.3d 503, 516 (6th Cir. 2008).

Here, Count IV of Carter's complaint is styled "Violations of the Family Medical Leave Act" and alleges that Ford violated Carter's rights under the Act by "failing to

grant plaintiff time off, restore Plaintiff to her previous position, or an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." It also alleges that she was "retaliated against for requesting time off work."

The "Background Facts" of Carter's complaint relevant to her Family Medical Leave Act Claim follow:

> 1. Plaintiff began her employment with Defendant in 2001.
> . . .
> 7. . . . Plaintiff was harassed by Defendant's employees and agents due to sex and violations of the Family Medical Leave Act.
>  . . .
> 14. Plaintiff's Family Medical Leave rights were also interfered with by the Defendant.

These allegations are, to say the least, "short and plain." Ford argues that "on its face" the complaint "does not allege that [Carter] was improperly terminated and then reinstated in 2005." True, the bulk of the complaint refers to facts that were relevant to Carter's Title VII claims (which she voluntarily withdrew), and the complaint contains little in the way of "supporting facts" to give Ford notice that her FMLA claim encompasses events in spring 2005. Yet the "Background Facts" section does state that Carter began working for Ford in 2001—which might reasonably be interpreted to provide notice that the lawsuit includes events that occurred throughout Carter's employment. And Count IV describes Ford's "failure to restore" her to "equivalent . . . terms and conditions of employment," which, arguably, could include Carter's probationary reinstatement in April 2005—a condition of employment not "equivalent" to the collective bargaining protections she had before she was terminated. Notably, besides her 2001 start date, the complaint does not tie its allegations to any particular date or event. Carter's complaint is not a model of clarity or specificity. On balance, even when construed "so as to do justice," it is, at best, ambiguous as to whether it encompasses allegations arising out of her 2005 termination.

## B.  *Carter's Deposition Testimony*

Assuming that Carter's complaint might reasonably be interpreted to put Ford on notice that her FMLA claim includes the March 2005 termination, the next question is whether Carter's deposition testimony—disavowing that her claim included events before 2005—effectively closed the door on those claims.

We can quickly dispose of Carter's contention that, despite the fact that she did not object to Ford's inclusion of her deposition testimony in its motion for summary judgment, the court should not have considered it because to do so would result in a "gross miscarriage of justice."  Carter maintains that her deposition testimony about which events comprised her claims amounted to a legal opinion by a lay witness, inadmissible under Fed. R. Evid. 701, and thus improper for consideration at the summary judgment stage.  That rule provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 [Testimony by Experts].

Fed. R. Evid. 701. This Court has described "[t]he problem with testimony containing a legal conclusion" as "conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury." *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985).

Here, the normal rationale for excluding lay witness testimony (including legal conclusions) does not apply because Ford offered Carter's deposition testimony to prove that the scope of her complaint was more limited than how she later presented it in opposing summary judgment.  Carter's deposition testimony is not the sort of testimony that has the potential to confuse a jury about the applicable legal standard:  it is not a jury's job to construe the scope of a complaint or decide which claims a plaintiff has waived or abandoned at the summary judgment stage.  Those are determinations for a

judge, who is better-equipped to separate "unexpressed, and perhaps erroneous legal standards" from testimony that is relevant to determining whether issues of material fact remain in a particular case. The district court simply used Carter's deposition testimony to evaluate the scope of her complaint. What Carter said at her deposition is evidence of the notice (or in this case lack of notice) that Ford had about the grounds on which Carter's complaint rested. Consequently, the district court's consideration of her deposition testimony in view of the course of the parties' proceedings was not in error.

### C. Carter's Response to Ford's Motion for Summary Judgment

But Carter's deposition testimony was not her last word on which events comprised her complaint. In her response to summary judgment, instead of responding to Ford's attacks on her claims arising out of her 2006 termination, she focused her argument exclusively on an FMLA claim arising out of her 2005 termination, which she says provided sufficient notice to Ford of what the fight was about.

We disagree because we must consider Carter's response in context. Had the challenge to the sufficiency of her pleading arisen in the context of a Rule 12(b)(6) motion, the district court would have applied the "extremely modest standard" of notice pleading, which "direct[] courts to construe pleading[s] liberally." *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001). But there is a "crucial" "difference in timing" when the sufficiency of a complaint arises at the summary judgment stage after "a plaintiff has had an opportunity for discovery." *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 789 (6th Cir. 2005). As the *Tucker* court summarized, the Federal Rules of Civil Procedure, "provide for liberal notice pleading at the outset of litigation because '[t]he provisions for discovery are so flexible' that, by the time a case is ready for summary judgment, 'the gravamen of the dispute [has been] brought frankly into the open for inspection by the court.'" *Id.* at 788 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)).

Notably, three months passed between Carter's deposition and when, as set forth in the litigation schedule, Carter responded to Ford's motion for summary judgment. Once Carter had information that would have caused her to reconsider her deposition

testimony regarding the scope of her claims, she had several options.  Under Rule 30(e)(1)(B), she had thirty days following her deposition to make changes "in form or substance."  Fed. R. Civ. P. 30(e)(1)(B).  She was, after all, under a general duty to supplement or correct discovery responses.  *See* Fed. R. Civ. P. 26(e). Alternatively, Carter could have amended her complaint if, in the course of discovery, she became aware of new causes of action.  Carter pursued neither of these options.  Instead, she waited until after the deadline for discovery had passed to give any indication that her deposition testimony did not accurately characterize the scope of her claims.

"Once a case has progressed to the summary judgment stage . . . the liberal pleading standards under *Swierkiwicz* and [the Federal Rules] are inapplicable." *Tucker*, 407 F.3d at 788 (quotations omitted).  As at the initial pleading stage, the question remains whether Ford had adequate notice of the charges it was defending.  After Carter said in her deposition that her FMLA claim was about the 2006 termination, Ford had no reason to further investigate the events of 2005 or to formulate a defense based on that claim.  And once discovery was closed, it could not. Even though, early in the litigation, Carter's ambiguous complaint could arguably have been construed to encompass the 2005 termination, Cater's deposition testimony expressly notified Ford that her claim focused on a separate event—the 2006 request for medical leave.

Because the issue is fair notice, in this case, Carter's attempt to revive or resurrect her 2005 claim at summary judgment was too little too late.  In the face of an ambiguous complaint, Ford used the discovery process to probe the contours of Carter's claims.  During the time period designated for discovery, Carter made no attempt to inform Ford that she was suing it based on her 2005 termination.  Thus, based on the information revealed in discovery (including Carter's deposition testimony), Ford defended a lawsuit that it believed was limited to the events Carter described in her deposition.

Of course, the notice inquiry necessarily proceeds on a case-by-case basis. Sometimes, as we have recognized, a claim raised in response to a summary judgment motion provides sufficient notice to the opposing party.  *See, .e.g., Vencor v. Standard*

*Life & Accident Ins. Co.*, 317 F.3d 629, 642 n.11 (6th Cir. 2003); *Howington v. Quality Rest. Concepts, LLC*, 298 F. App'x 436, 442 n.6 (6th Cir. 2008) (unpublished).  But those cases are distinguishable because they did not involve, as here, an earlier express disavowal of the very claim the party attempted to raise in response to summary judgment.

The conclusion that Carter's complaint did not, by the summary judgment stage, encompass the 2005 termination is consistent with the method we have followed in construing ambiguous complaints in other contexts.  For example, in *Harris v. Bornhorst*, 513 F.3d 503, 516 (6th Cir. 2008), this Court looked at the "course of the proceedings" to determine whether defendants had received notice of the plaintiff's § 1983 claims where the complaint was "ambiguous."  In concluding that the defense had notice of certain claims, the Court reviewed statements made by the plaintiff and his counsel during depositions and concluded that they "demonstrate[d] that both sides understood" the suit to encompass claims "not explicitly set forth in the complaint." *Id.* Just the opposite is true here.  The deposition is the only proceeding in the record where Carter explained the scope of her claims, and, at that time, neither she nor Ford understood it to include the March 2005 termination.

IV.

Carter's ambiguous complaint must be considered in light of her discovery responses about the scope of her claim.  Ford attempted to use the discovery process to clarify the contours of Carter's ambiguous and broadly worded complaint.  Carter's failure to clarify her deposition testimony left Ford, at the close of discovery, with the impression that she was pursuing claims based on her 2006 termination.  It had no notice to the contrary and, in this case, it would be unfair to allow Carter to pursue a claim that she expressly disavowed and which did not otherwise come to light during the discovery period.  We AFFIRM.