NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0698n.06

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JOANNE P. RUSS | ) | **FILED** |
| | ) | Dec 21, 2017 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MEMPHIS LIGHT GAS & WATER DIVISION | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:     COLE, Chief Judge; ROGERS and GRIFFIN, Circuit Judges.

ROGERS, Circuit Judge.  In this employment dispute, plaintiff Joanne Russ had worked for defendant Memphis Light Gas & Water Division ("MLGW") for more than three decades when she suffered a stroke in 2009 that impaired some of her cognitive functioning.  Although Russ returned to work in the fall of 2009, she claims that she was subsequently discriminated against on the basis of her disability, race, and gender, which led her to retire in January 2014.  Immediately after retiring, Russ filed a charge with the Equal Employment Opportunity Commission that alleged discrimination only on the basis of her disability.  She then sued MLGW, advancing a host of claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  The district court granted summary judgment to MLGW on all but two of Russ's claims: constructive discharge and an ADA claim based on Russ's request for a workweek limited to

40 hours. These remaining claims were tried to a jury, which rendered a verdict in favor of MLGW. On the claims that went to trial, Russ's only challenges on appeal are to evidentiary determinations that, on review, do not reflect any abuse of discretion. Russ also challenges the district court's earlier grant of summary judgment as to the other claims. The district court, however, properly granted summary judgment on those claims.

**I.**

Russ began working for MLGW in 1977. In 1978, she filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging race and gender discrimination, which the parties settled. Despite this early friction, by 1999 Russ had been promoted to Supervisor of the Compensation Department. This position required her to work 60 to 80 hours per week to complete her assignments. During this period, Russ did not have to arrive at work by any particular time. Instead, she would stay as late as necessary to complete her work, and then come in late the next day to "offset" the extra hours. From 2005 to 2008, Russ worked under Vice President Armstead Ward and, with Ward's permission, continued to arrive late and stay late.

This overwork caused Russ stress, which in turn took a toll on her health. In March 2009, she was diagnosed with Type 2 Diabetes. Shortly thereafter, in July 2009, she suffered a stroke, requiring her to take sick leave. The stroke hurt her memory and her abilities to speak and multi-task. It also caused her to become easily confused and frustrated. In particular, after the stroke Russ found driving in traffic to be stressful.

In October 2009, Russ's physician, Dr. Robert McEwan, allowed her to return to work, but recommended that she work no more than 40 hours per week. MLGW agreed to this restriction. After returning, Russ still did not have to be at work at any set time: as long as she

stayed late enough to finish her work, she could come in at 10 or 11 o'clock the next morning. However, despite MLGW's agreement that she could limit her work week to 40 hours, Russ found that she still had to work more than 40 hours per week to complete her assignments.

In 2013, MLGW's attitude toward Russ's late start time changed. On February 11, 2013, Russ's supervisor, MLGW Vice President Dr. Von Goodloe, orally reprimanded her for tardiness. Goodloe recorded the reprimand in an internal memorandum, in which he wrote that Russ had agreed to arrive at work no later than 9:30 a.m. from then on. For purposes of summary judgment, the parties agreed that this reprimand pressured Russ to work more than 40 hours per week.

Sometime in 2013, Russ requested three additional employees to help with her work. MLGW considered this request at a budget meeting on August 27, 2013, which Russ did not attend. At the meeting, the President and CEO of MLGW, Jerry Collins, criticized Russ's working habits. MLGW ultimately declined to give her more employees.

When Russ returned from vacation on September 3, 2013, Goodloe told her to arrive at work by 8:30 a.m. from then on. Soon thereafter, Russ filed an internal discrimination complaint, which alleged that MLGW had retaliated against her for her stroke-related disabilities by criticizing her during the budget meeting and by denying her a promotion to Manager. The complaint also expressed her desire to move her start time back to 9:30 a.m., which Russ claimed was necessary because early morning traffic contributed to her stress.

On October 24, MLGW held an interactive process meeting in response to Russ's internal complaint. At this meeting, Russ explained that, despite the nominal 40-hour-per-week accommodation, she was still having to work more than 40 hours each week to complete her assignments. Russ also said that she was disabled by stress, which had caused her stroke and

was exacerbated by driving in traffic, and that she still could not multi-task and was having difficulty thinking. She requested an accommodation to move her start time to 9:30 a.m., and again requested additional support staff.

After the meeting, on November 14, 2013, Dr. McEwan wrote a letter to MLGW suggesting Russ's start time be moved back to 9:30 a.m. so she would not have to endure the stress of the "vexing and busy" early morning Memphis traffic. The letter also reiterated that Russ should not work more than 40 hours per week. MLGW responded with a letter seeking to clarify whether Russ's disability was stress, and whether a 9:30 a.m. start time and 40-hour restriction were "medically necessary." On January 14, 2014, Dr. McEwan wrote back that Russ attributed her stroke to stress caused by her job and traffic, and that "[p]erhaps if Ms. Russ's hours could be re-arranged she and [M]LGW could co-exist until she retires." Following Dr. McEwan's second letter, on January 27 MLGW denied Russ's accommodation requests. In its denial letter, MLGW explained that, despite its requests for information about Russ's condition, Dr. McEwan's letter "did not disclose any disabling effects from this condition or medical restrictions."

Russ announced her retirement on February 14, 2014. One day later, she filed a *pro se* charge of discrimination with the EEOC. On the charge, she checked the boxes indicating discrimination based on "Retaliation" and "Disability," but left all other boxes blank. In the narrative portion of the charge, Russ explained the alleged discrimination as follows:

> On January 17, 1977, I was hired with [MLGW]. I am currently in the position of Supervisor of Compensation Administration. On November 20, 2009, I requested an accommodation regarding my disability and was granted the request (work 40 hours per week). Before my disability, I was working 60-80 hours a week. In July 2013, I asked to be promoted to the position of Manager due to my responsibilities [in] the department. No reason was given for the denial. On August 27, 2013, a budget meeting was held. I requested three (3) employees (two (2) Professional and one (1) Clerical[)]. I was denied this request and the

comment was made by Jerry R. Collins, President & CEO that I needed the additional employees to do my work because I am never at work. This request was denied. On September 4, 2013, I was informed by Von Goodloe, Vice President of Human Resources that I am expected to report to work no later than 8:30 a.m. each day and complete no less than the normal scheduled eight (8) hours. On October 18, 2013, I requested another accommodation (to have my report time changed from 8:30 a.m. to 9:30 a.m.). On January 27, 2014, I was denied the request.

I believe I have been discriminated against because of my disability and in retaliation for requesting an accommodation due to my disability, in violation of the Americans with Disability Act, Amendment Act (ADAAA).

Thus, on its face, Russ's charge alleged discrimination on account of her disability, but mentioned nothing about discrimination for any other reason (such as gender or race).

A month before filing the charge, Russ had also submitted an EEOC intake questionnaire.[1] On this form, in response to the question, "What is the reason (basis) for your claim of employment discrimination?", she checked the boxes for "Race," "Age," and "Retaliation." Curiously, however, Russ left the "Disability" box blank. In response to the question, "What happened to you that you believe was discriminatory?", Russ wrote that, at the August 2013 budget meeting, she had been penalized for not working enough. She further wrote that she believed this action was discriminatory because she had a disability from her 2009 stroke, and because she had previously filed a successful EEOC charge (although the form did not elaborate as to the subject or date of the earlier charge). On the next page of the form, in response to the question, "What is the disability that you believe is the reason for the adverse action taken against you?", Russ wrote: "Stress—working 60+ hours per week, and traveling in heavy traffic." So, although Russ checked "Race" and "Age" but not "Disability" on the intake

---

[1] Although the intake questionnaire is dated January 6, 2013, it refers to events that occurred in August and September 2013, and therefore was likely submitted on January 6, *2014*. According to the form, the purpose of an intake questionnaire is "to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate."

form, the narrative portions of this form focused on Russ's disability as the cause of MLGW's alleged discrimination. The possible exception would be the bare mention of a previous EEOC Charge, which could have referred to Russ's 1978 charge alleging race and gender discrimination. However, the form did not specify which EEOC charge Russ meant, nor did it state why that charge had been filed.

The EEOC issued a right-to-sue letter, and Russ filed suit in the U.S. District Court for the Western District of Tennessee. The district court interpreted Russ's amended complaint to include the following claims: (1) retaliation; (2) hostile work environment; (3) constructive discharge; and (4) three ADA failure-to-accommodate claims, based respectively on MLGW's denial of Russ's requests for (i) more employees, (ii) a later start time, and (iii) a 40-hour work week. Respecting the retaliation claim, the parties disputed whether the amended complaint alleged a retaliation claim only under Title VII or under both Title VII and the ADA. The amended complaint's "Causes of Action" section contained just one somewhat ambiguous sentence: "Defendant's actions constitute unlawful discrimination on the basis of disability in violation of the ADAA [sic] and on the basis of retaliation, in violation of Title VII, 42 U.S.C. § 2000e." At summary judgment, MLGW argued that this alleged only a claim of retaliation under Title VII, while Russ maintained it asserted an ADA retaliation claim as well.

The district court granted summary judgment to MLGW on three groups of Russ's claims: (1) the claims for retaliation under the ADA and Title VII; (2) the hostile-work-environment claim; and (3) the ADA claims based on MLGW's denial of Russ's requests for more employees and a later start time. The district court first concluded that Russ's amended complaint did not allege an ADA retaliation claim, and that she had failed to exhaust administrative remedies with respect to her Title VII retaliation and ADA hostile-work-

environment claims. As for the ADA claim based on Russ's request for more employees, the district court held that Russ failed to carry her initial burden of proposing a reasonable accommodation. And the other ADA claim—for denial of Russ's request for a later start time—failed as a matter of law because "the ADA does not require an employer to accommodate an employee's commute."

However, the district court denied MLGW summary judgment on Russ's other two claims, namely Russ's constructive discharge claim and her ADA claim based on the denial of her 40-hour-work-week request. These claims were tried to a jury, which returned a verdict in favor of MLGW.

Russ now appeals, challenging the district court's grant of summary judgment to MLGW on her retaliation claims, her hostile-work-environment claim, and two of her three ADA failure-to-accommodate claims. She also argues that the district court erred in several of its evidentiary rulings at trial. However, each of these contentions fails. First, Russ's complaint, viewed in light of her subsequent deposition testimony, did not provide fair notice that she was asserting an ADA retaliation claim. Second, Russ did not exhaust administrative remedies with respect to her Title VII retaliation claim or her ADA hostile-work-environment claim because her EEOC charge did not provide notice that she intended to bring either of these claims. Third, both of her ADA failure-to-accommodate claims fail too: one because Russ failed to make out a prima facie case, and the other because she forfeited the issue on appeal. Finally, the evidentiary errors that Russ claims occurred at trial were either not errors at all or were harmless.

**II.**

The district court correctly granted summary judgment to MLGW on (A) Russ's ADA retaliation claim, (B) her Title VII retaliation claim, (C) her ADA hostile-work-environment

claim, and (D) her ADA failure-to-accommodate claims based on MLGW's refusal to supply her with more employees and to permit her a later start time. Contrary to Russ's contentions, in doing so the district court did not misstate or misapply the summary judgment standard.

**A.**

The district court was correct to grant MLGW summary judgment on the ADA retaliation claim because Russ's amended complaint, coupled with her subsequent deposition testimony, did not provide fair notice that she was advancing such a claim. As mentioned, the amended complaint contained the following language regarding causes of action: "Defendant's actions constitute unlawful discrimination on the basis of disability in violation of the ADAA [sic] and on the basis of retaliation, in violation of Title VII, 42 U.S.C. § 2000e." On its face, this language most naturally suggests that Russ was bringing a retaliation claim only under Title VII, not under the ADA as well. This conclusion is reinforced by deposition testimony that Russ gave during discovery:

> **[MLGW's Lawyer]**: Defendant's actions constitute unlawful discrimination on the basis of disability in violation of the ADAA and on the basis of retaliation in violation of Title VII 42 U.S.C. [2000e]. That's your claim, right, as far as you know?
> **[Russ]**: Disability and retaliation, yes.
> **[MLGW's Lawyer]**: Yes, ma'am. And—and the basis for it would be the statutes that govern disability law and the retaliation for—
> **[Russ]**: For—
> **[MLGW's Lawyer]**: —exercising your right to claim a disability?
> **[Russ]**: No. The retaliation is based on filing in '78, the—my color for—for Jerry Collins, being a female, I guess, for Jerry Collins, to take my work schedule away from me after I've been having it from '99 to 2013.
> **[MLGW's Lawyer]**: Anything else?
> **[Russ]**: Not giving me the—not bidding the manager position, putting it in the budget so it could be bid, and not giving me the money for the project.

Although this testimony is not crystal clear, Russ appears to flatly deny that her retaliation claim was related to her disability, and to assert instead that it was based on retaliation

for her 1978 EEOC charge, which alleged race and gender discrimination. This accords with other deposition testimony given by Russ. In response to questioning about why Russ believed Collins denied her a promotion and criticized her work habits at the August 2013 budget meeting, she stated that "it was retaliation. It was based on my race." Later, MLGW's lawyer asked Russ to describe any other retaliation against her, and Russ said: "Everything that led up to [the August 2013 budget meeting] . . . lead[s] me to believe from the bottom of my heart that it is based off my race and the fact that I filed in '78." The MLGW lawyer continued, "You're saying that everything that happened to you that you've described to us since 1978 that held you down from where you thought you should be in [MLGW] was the result of a retaliation that was carried out against you for filing your charges in 1978?" And Russ responded, "It was part of it. And the other part is the fact that I'm just black. That's true."

Thus, even if Russ's amended complaint is ambiguous as to the basis for her retaliation claim, her subsequent testimony is not. Russ's ADA retaliation claim therefore fails because her amended complaint did not give MLGW fair notice that she was making such a claim. We addressed a similar situation in *Carter v. Ford Motor Co.*, 561 F.3d 562 (6th Cir. 2009). There, a Ford employee was fired twice: once in 2005 for missing work without properly extending medical leave, and then, after being reinstated, she was fired again in 2006 for a workplace altercation. *Id.* at 563. The employee sued Ford under the Family Medical Leave Act. In deposition testimony, she unequivocally stated that the lawsuit did not cover the time period of her 2005 termination, and instead insisted that it related only to a request for medical leave she purported to have made just before being terminated in 2006. *Id.* at 565. When Ford filed for summary judgment, however, the employee changed her tune and argued that the claim encompassed the original 2005 termination. We held that, despite ambiguity in the complaint,

the employee's "deposition testimony expressly notified Ford that her claim focused on . . . the 2006 request for medical leave," not the 2005 termination. *Id.* at 568. The employee's deposition testimony had deprived Ford of fair notice that the 2005 termination was at issue in the case, and so it was too late for the employee to expand her claim at summary judgment. *Id.* at 568–69.

The same analysis applies here. Even if Russ's amended complaint was ambiguous, any ambiguity was removed when she repeatedly insisted in deposition testimony that her retaliation claim was only related to racial discrimination and her 1978 EEOC charge, which alleged discrimination on the basis of race and gender. Russ's numerous statements that she was claiming retaliation only on the basis of race and gender deprived MLGW of fair notice that she was asserting an ADA retaliation claim too, especially given that the plain language of her amended complaint appeared to speak only of Title VII retaliation. Therefore, the district court appropriately granted MLGW summary judgment on the ADA retaliation claim.

**B.**

MLGW was also entitled to summary judgment on Russ's Title VII retaliation claim. Russ's EEOC charge only mentioned discrimination on the basis of disability, and so she failed to exhaust administrative remedies for a claim under Title VII.

The exhaustion doctrine precludes an employee from suing under Title VII or the ADA unless she has exhausted her administrative remedies. To exhaust, an employee must file a charge of discrimination with the EEOC that includes all claims the employee intends to bring in district court. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). Only claims that are included in the charge or are "reasonably related to or grow out of the factual allegations in the EEOC charge" may be heard in federal court. *Id.* at 361–62.

The allegations in Russ's charge were insufficient to exhaust her administrative remedies for a Title VII retaliation claim. Title VII only protects against discrimination on the basis of certain traits, namely "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Here, on Russ's charge she checked the boxes for "Retaliation" and "Disability," but left all others blank (including those marked "Race," "Color," and "Sex"). The narrative portion of the charge said nothing about discrimination on the basis of race or gender. Moreover, the charge concluded: "I believe I have been discriminated against because of my disability and in retaliation for requesting an accommodation due to my disability, in violation of the [ADA]." The charge was thus completely devoid of allegations of discrimination on the basis of any of the traits protected by Title VII, and instead expressly alleged that Russ had been discriminated against on the basis of her disability, which Title VII does not prohibit. Under these circumstances, a Title VII retaliation claim was neither reasonably related to the factual allegations in the charge, nor could it have grown out of them. Therefore, Russ did not exhaust her administrative remedies for a Title VII retaliation claim.

Russ argues that *Spengler v. Worthington Cylinders*, 615 F.3d 481 (6th Cir. 2010), compels a different result. This reliance is misplaced. In *Spengler*, the plaintiff's EEOC charge alleged that, after he complained about his supervisor's age-related bias, the supervisor terminated him due to a "personal vendetta." *Id.* at 490. We held that, even though the plaintiff had not checked the retaliation box on his charge, the allegations were enough to put the EEOC on notice of an age-related retaliation claim. *Id.* Here, unlike *Spengler*, the allegations in Russ's charge had nothing to do with discrimination based on any relevant characteristic, *i.e.*, those protected by Title VII. Therefore, as previously discussed, the factual allegations in the charge did not provide notice that Russ was pursuing a Title VII retaliation claim.

While it is true that Russ did allude to racial discrimination on her EEOC intake questionnaire, several of our sister circuits have held that allegations contained only in an intake questionnaire may not be considered for exhaustion purposes. *See Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 415 (3d Cir. 2010); *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408–09 (4th Cir. 2013); *Teffera v. N. Tex. Tollway Auth.*, 121 F. App'x 18, 21 (5th Cir. 2004); *Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999); *Green v. JP Morgan Chase Bank Nat'l Ass'n*, 501 F. App'x 727, 731–32 (10th Cir. 2012). Even assuming that intake questionnaires may be considered, the references to race in Russ's questionnaire were oblique at best, and accordingly were insufficient to notify the EEOC or MLGW of a possible Title VII claim.

On the intake questionnaire, Russ checked the box indicating that "Race" was one of the bases for her claim of discrimination. But the questionnaire contained no clear factual allegations of racial discrimination to explain this checkmark. In response to the question, "Why do you believe [the employer's] actions were discriminatory?", Russ wrote: "I am an exempt management employee. I have a disability from my 2009 stroke, and I have file[d] [EEOC] charges before and won." There was no explanation of when or why these EEOC charges were filed. Thus, even if this was a reference to Russ's 1978 EEOC charges that alleged discrimination on the basis of race and gender, the questionnaire's bare mention of previous, unspecified EEOC charges was insufficient to alert the EEOC (let alone MLGW, who would not have received this form) that Russ was claiming retaliation for having once alleged race and gender discrimination. Because the questionnaire contained no other mention of discrimination on the basis of race or gender (or any other characteristic protected by Title VII), it did not provide notice of a potential Title VII claim.

Additionally, while it is possible under certain circumstances for an intake questionnaire itself to constitute a charge, *see Fed. Express Corp. v. Holowecki*, 552 U.S. 389 (2008), Russ does not argue that is the case here. Nor could she. Under *Holowecki*, a filing other than a charge will not be deemed a charge unless "an 'objective observer' would believe that the filing 'taken as a whole' suggests that the filer 'requests the agency to activate its machinery and remedial processes.'" *Williams v. CSX Transp. Co.*, 643 F.3d 502, 508–09 (6th Cir. 2011) (quoting *Holowecki*, 552 U.S. at 398, 402). Here, Russ's intake questionnaire contains no language that could be construed as asking the EEOC to take action against MLGW, and so it does not qualify as a charge on its own.

Therefore, even construing Russ's *pro se* charge liberally, it was insufficient to exhaust administrative remedies for a Title VII retaliation claim, and summary judgment was appropriate on this basis.

## C.

Russ's ADA hostile-work-environment claim, too, was not properly exhausted. Her charge did not expressly include a claim of hostile work environment. Therefore, her charge could only exhaust administrative remedies for a hostile-work-environment claim if such a claim was reasonably related to or could have grown out of the factual allegations in the charge. *See Younis*, 610 F.3d at 362. However, for a hostile-work-environment claim to be reasonably related to or grow out of an employee's charge, the charge must allege more than isolated discrete acts of discrimination. Here, Russ's charge alleges only isolated acts over a lengthy period, and it was therefore insufficient to exhaust her administrative remedies with respect to this claim.

To establish a claim of hostile work environment, "a plaintiff must present evidence of harassment that 'unreasonably interferes with his work performance and creates an objectively intimidating, hostile, or offensive work environment.'" *Id.* (quoting *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008) (alterations adopted)). Because this standard requires an employer's discriminatory conduct to be pervasive, allegations in an EEOC charge of only an isolated and discrete act or acts are insufficient to provide notice of—and thus to exhaust administrative remedies for—such a claim.[2] *Id.* For instance, in *Younis*, the plaintiff's EEOC charge alleged "three or four isolated comments by his peers that occurred over a three-year period." *Id.* We concluded that these three or four isolated comments were discrete acts, allegations of which were insufficient to exhaust the plaintiff's administrative remedies for a hostile-work-environment claim.

The same is true here. Russ's charge discussed four acts over the course of roughly six months: (1) in July 2013, Russ was denied a requested promotion; (2) on August 27, 2013, Collins criticized Russ's work habits; (3) also on August 27, 2013, Russ's request for additional employees was denied; and (4) on January 27, 2014, Russ's request for a later start time was denied. As in *Younis*, allegations of these four discrete acts, which spanned six months, were not enough on their own to provide notice that Russ was alleging a hostile work environment. Russ therefore did not exhaust her administrative remedies with respect to this claim.

---

[2] Although *Younis* involved a Title VII hostile-work-environment claim, its holding applies here because the elements of a hostile-work-environment claim are the same whether brought under the ADA or Title VII. *See Trepka v. Bd. of Educ. of the Cleveland City Sch. Dist.*, 28 F. App'x 455, 460–61 (6th Cir. 2002) (per curiam).

**D.**

The district court also properly granted MLGW summary judgment on Russ's ADA failure-to-accommodate claims related to her requests for more employees and a later start time.

First, with respect to Russ's more-employees claim, the district court correctly determined that this claim fails because Russ did not meet her initial burden to propose a reasonable accommodation. An employee raising a failure-to-accommodate claim bears the initial burden to propose an accommodation that is reasonable. *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 480 (6th Cir. 2012); *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007). Here, the accommodation that Russ requested was that MLGW provide her with three more employees so that she could complete her work in 40 hours each week. Under the ADA, it may be a reasonable accommodation to shift some of a disabled employee's duties to other employees, but only if the other employees assist with the disabled employee's nonessential duties. *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 632 (6th Cir. 1999). Thus, it was Russ's burden to explain how the additional employees would assist only with her *nonessential* duties, because if they would assist with her *essential* duties, the accommodation would not be reasonable. However, Russ did not explain what these additional employees would do, other than to suggest vaguely that they would help with her general workload. This case is thus like *Bingaman v. Procter & Gamble Co.*, No. 04-3584, 2005 WL 1579703 (6th Cir. July 6, 2005) (unpublished), in which we held that the plaintiffs did not make out a prima facie ADA case when they "failed to articulate with any specificity what types of job tasks would be shifted to other [employees]," because without that information, it would be impossible to determine "whether such accommodations would be reasonable or whether they would result in the shifting

of 'essential' work tasks to other employees." *Id.* at *6. Accordingly, Russ did not meet her

initial burden of proposing a reasonable accommodation, and this claim was properly rejected.

Second, Russ has forfeited her ADA claim based on MLGW's refusal to grant her a later

start time. Although Russ's brief lists this issue in the heading for Section I of its argument, the

brief includes no substantive argument on this point. Russ has therefore forfeited consideration

of this issue on appeal. *See Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 462 (6th Cir.

2003).

**E.**

Russ argues that the district court misstated the standard for summary judgment such that

it slanted impermissibly in favor of the movant. However, contrary to Russ's contention, the

district court amply and correctly laid out the proper summary judgment standard. Moreover,

although Russ complains that the district court neglected to expressly state that all justifiable

inferences must be drawn in the non-movant's favor, she does not suggest any particular

inferences that, in her view, the district court should have, but did not, draw in her favor. Nor

does she specifically suggest any other way in which the summary judgment standard was

misapplied. Accordingly, this argument is meritless.

**III.**

Russ's remaining contention is that the district court made three erroneous evidentiary

rulings at trial. However, the first ruling of which Russ complains was not error at all, and the

other two, even if errors, do not warrant reversal because they did not harm Russ's substantial

rights.

First, Russ points to MLGW's opening statement, in which MLGW's attorney showed

the jury Russ's EEOC charge and explained that it included allegations that MLGW had denied

Russ's requests for more employees and a later start time. To narrow the issues before the jury, MLGW's attorney truthfully told them that the district judge had already ruled that these denials did not violate the ADA, and thus were no longer part of the case. Russ's lawyer did not object immediately. But later, outside the jury's presence, Russ's lawyer voiced her concern that the jury might believe that, because the judge had already rejected some of Russ's claims, that must mean the rest were meritless too. The district court agreed that it should give the jury a cautionary instruction. The court then instructed the jury: "Anything I may have ruled or decided before the case began, you can ignore that . . . ." It also cautioned: "Don't worry about any other legal opinions I may have given during the trial, [or] before the trial."

It is unclear what Russ's complaint is—once her lawyer objected and brought the problem to the district court's attention, the court agreed with her and cautioned the jury against drawing precisely the inference Russ was concerned about. This was not error at all. Moreover, a district court's evidentiary rulings are reviewed only for abuse of discretion, *Nolan v. Memphis City Schs.*, 589 F.3d 257, 264 (6th Cir. 2009), and since this ruling was not error it surely was not an abuse of discretion.

Next, Russ complains that the district court allowed MLGW to engage in two lines of questioning that resulted in allegedly prejudicial testimony given by Russ herself. These arguments are unavailing, however, because Russ was not prejudiced by either exchange, and so any error that may have occurred was harmless.

In the first line of questioning, the district court allowed MLGW's attorney to ask Russ about reprimands for tardiness she had received in 2002 and 2003. In an earlier sidebar, Russ's attorney had expressed concern that this questioning would prompt Russ to talk about an EEOC charge she had successfully filed against her supervisor from that period. Russ's attorney

appeared primarily concerned that this testimony would be irrelevant and a waste of time, although that is not entirely clear from the record. The district court permitted MLGW's attorney to ask about the reprimands. When MLGW's attorney asked Russ whether the previous supervisors who had complained about her tardiness were mistaken, Russ responded by explaining that she had filed EEOC charges against the former supervisor who had reprimanded her for tardiness. After the questioning continued on the subject of this former supervisor for a little while, Russ's attorney eventually objected that the questioning was "going down a rabbit trail" about the supervisor, which appeared to be an objection for relevance. The objection was overruled.

Russ's challenge fails because she does not explain why this testimony was prejudicial. Under Federal Rule of Evidence 103(a), a party may claim error in a ruling to admit or exclude evidence "only if the error affects a substantial right of the party." Thus, even assuming it was error to permit this questioning, any error that did not affect Russ's substantial rights was harmless and would not provide a basis for reversal. An evidentiary error is harmless if it appears, "with fair assurance, that the judgment was not substantially swayed by the error." *Griffin v. Finkbeiner*, 689 F.3d 584, 599 (6th Cir. 2012) (quoting *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 409–10 (6th Cir. 2006) (alteration adopted)). Here, Russ does not even explain why the testimony at issue was unfavorable to her, let alone how it could have swayed the trial in favor of MLGW. The relevant testimony showed that Russ had previously filed an EEOC charge against her supervisor at MLGW, and that the charge was successful. Indeed, Russ testified that, after her charge, the supervisor was not permitted to have supervisory authority over her, and she "took his job." If anything, this testimony enhances Russ's

credibility and casts MLGW in a negative light. Thus, she has not shown how admission of this testimony prejudiced her, and its admission was, at worst, harmless error.

In the other exchange of which Russ complains, MLGW's attorney asked Russ about certain paragraphs of her amended complaint. The parties had agreed that MLGW could publish several paragraphs of the amended complaint to the jury while MLGW's attorney questioned Russ about them. MLGW's lawyer then, without using the word "retaliation," asked Russ about paragraph 33 of her amended complaint (which contains the term "retaliation"). Russ responded by adding that the paragraph included the term "retaliation." MLGW's attorney clarified that "the word 'retaliation' is no longer in this case," and Russ's counsel agreed to stipulate that retaliation was no longer part of the case. At no point in this exchange did Russ's counsel object.

Russ now contends that the concept of retaliation—which Russ herself brought up—was prejudicial. Russ does not quite explain why this mention of retaliation was prejudicial, but presumably it was because it alerted the jury to the fact that Russ had originally alleged retaliation and this claim had already been knocked out of the case. Because Russ did not object, admission of this testimony is reviewed only for plain error. Fed. R. Evid. 103(e). This standard requires Russ to show "(1) error, (2) that is plain, and (3) that affects substantial rights." *Fathera v. Smyrna Police Dep't*, 646 F. App'x 395, 400 (6th Cir. 2016) (quoting *Johnson v. United States*, 520 U.S. 461, 466–67 (1997)). If these conditions are met, "we may exercise our discretion to review the error, 'but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *Johnson*, 520 U.S. at 467). Russ does not argue that she can make this difficult showing. Even if she did make such an argument, it would fail because, as with the previous testimony, admission of this testimony did not affect her substantial rights. Viewed in the context of the whole trial, this lone mention of retaliation was

insignificant and far from enough to prejudice Russ's rights, especially since the district court had already given a curative instruction reminding the jury not to consider the court's pre-trial rulings.

## IV.

The judgment of the district court is affirmed.