NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0418n.06

Case No. 20-6437

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Sep 03, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| THOMAS J. BROOKS, III, | ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| KEVIN SPIEGEL, in his individual capacity | ) | STATES DISTRICT COURT FOR |
| and his official capacity as the Chief Executive | ) | THE EASTERN DISTRICT OF |
| Officer of Chattanooga-Hamilton County | ) | TENNESSEE |
| Hospital Authority, d/b/a Erlanger Health | ) | |
| System, | ) | OPINION |
| Defendant-Appellee. | ) ) | |

Before: SILER, MOORE, and THAPAR, Circuit Judges.

SILER, Circuit Judge. Appellant Thomas Brooks, III, believes that the district court should have allowed him to assert a particular theory of municipal liability against Appellee. We disagree and affirm.

Brooks' hospital privileges at the Chattanooga-Hamilton County Hospital Authority, d/b/a/ Erlanger Health System (Erlanger), were terminated. Brooks asserts in this 42 U.S.C. § 1983 action that this termination violated his constitutional rights. At this stage of the litigation, Brooks asserts liability for the purported violation of his constitutional rights in only one way: That Erlanger, as a state entity, is liable to him for the termination of his hospital privileges because "an official with final decision making authority[,]" specifically, the Board of Trustees of Erlanger (Board), "ratified" that purportedly unconstitutional termination. *See Burgess v. Fischer*, 735 F.3d

462, 478 (6th Cir. 2013) ("A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom. A plaintiff can make a showing of an illegal policy or custom by demonstrating . . . that an official with final decision making authority ratified illegal actions[.]" (citations omitted)). The district court granted summary judgment for Erlanger because it felt that Brooks did not sufficiently make Erlanger aware of that particular theory of municipal liability. And without the availability of any theory of municipal liability, Brooks could not bridge the gap between his alleged constitutional violations and liability on Erlanger's part.

In reviewing the district court's decision, we start with Brooks' operative complaint. *See Carter v. Ford Motor Co.*, 561 F.3d 562, 565 (6th Cir. 2009) ("The district [court] did not consider a claim arising out of [the plaintiff]'s 2005 termination to be part of [her] complaint based on 'her deposition.' Thus, the court determined the scope of [the plaintiff]'s claims not by reference to the language of her complaint, but by how she described her case in her deposition. Nonetheless, the court's evaluation of the scope of [the plaintiff]'s claims amounts to a decision of the sufficiency of a pleading, which is a question of law that we review de novo." (citations omitted)). The only allegations that even hint at Brooks asserting a ratification-by-the-Board theory of municipal liability are that Erlanger "is a governmental entity with trustees . . . . Erlanger . . . suspended the hospital privileges of . . . Brooks . . . for no legal reason. Erlanger agents and employees[,] at the direction of . . . [Erlanger CEO] Kevin Spiegel, . . . have continued to deprive . . . Brooks . . . of his hospital privileges" and "[Erlanger] became aware of the actions of . . . Spiegel . . . and has ratified [his] actions[.]" Nowhere in Brooks' operative complaint, however, does he explicitly identify the Board as the final decisionmaker that ratified the termination of Brooks' hospital privileges. The discussion of the "trustees" in Brooks' operative complaint

surrounds Brooks' assertion that Erlanger is a governmental entity acting under color of state law for purposes of proceeding under § 1983, not any discussion of the "trustees" acting as the relevant final decisionmaker or even having that power. However, assuming that Brooks' ambiguous "complaint might reasonably be interpreted to put [Erlanger] on notice that" he asserted a ratification-by-the-Board theory of municipal liability, "the next question is whether" later proceedings in the litigation "effectively closed the door on th[at] claim[]." *See id*. at 566.

That door closed at the motion-to-dismiss stage. Erlanger obviously did not believe Brooks asserted a ratification-by-the-Board theory of municipal liability because Erlanger, in its motion to dismiss, used the Board's final decision-making authority *as a defense* to any purported assertion by Brooks of a general ratification-by-a-final-decisionmaker theory of municipal liability. Additionally, Erlanger argued that Brooks' failure to plead any facts showing (1) his use of available administrative remedies and (2) an affirmative and express final decision by the Board concerning his medical privileges, resulted in the failure of that theory.

Brooks' response to that motion provides essentially no indication that he intended to proceed on a ratification-by-the-Board theory of municipal liability. Interestingly, Brooks appears to admit in his brief to this court that his response did not indicate that he was asserting even a *general* ratification-by-a-final-decisionmaker theory of municipal liability: "[A]t the motion to dismiss stage of the proceedings, Dr. Brooks never indicated which theory he advanced with respect to the loss of his hospital privileges claim." In any event, Brooks still did not identify the Board as the relevant final decisionmaker or expound on his reason for quoting the aforementioned pleaded assertions other than arguing that those assertions, in conjunction with other quoted pleaded assertions, purportedly "establish a motive on the part of [Erlanger] to deprive Dr. Brooks of his constitutional rights[,]" hardly an indication of an intent to proceed on a ratification-by-a-

final-decisionmaker theory of municipal liability. Although Brooks did state in his response that "Erlanger is a governmental entity with trustees[,]" Brooks, once again, tied that statement to a discussion about his ability to proceed under Section 1983, not any discussion about a ratification-by-a-final-decisionmaker theory of municipal liability, and did not indicate that the "trustees" have any relevant power. More importantly, almost the entirety of Brooks' response centers on discussing his ability to proceed on a custom-of-inaction theory of municipal liability only.

In its order addressing Erlanger's motion to dismiss and consistent with Brooks' representations, the district court explicitly announced that it interpreted the scope of Brooks' operative complaint to include only a custom-of-inaction theory of municipal liability. Notably, the district court discussed the relevancy of "the Board's decisions" specifically as they pertained to Brooks' "inaction theory[,]" not a ratification theory, and viewed Brooks as arguing that Spiegel possessed relevant final decision-making authority and responsibility to act for purposes of the inaction theory in contrast to Erlanger's argument that the Board possessed such authority and responsibility. At this stage, not only was there no reason to believe that Erlanger had "fair notice" of any assertion by Brooks of a ratification-by-a-final-decisionmaker theory of municipal liability, *see id.* at 568, but Brooks failed to respond to Erlanger's argument in its motion to dismiss that Brooks could not validly maintain even a general ratification-by-a-final-decisionmaker theory of municipal liability, *see Doe v. Bredesen*, 507 F.3d 998, 1007–08 (6th Cir. 2007) ("Doe's complaint further alleged . . . violat[ions of] his fundamental federal constitutional rights to privacy and substantive due process, procedural due process, and his privilege against self-incrimination, as well as his right to privacy under the Tennessee Constitution . . . . The district court correctly noted, however, that Doe abandoned those claims by failing to raise them in his brief opposing the

government's motion to dismiss the complaint. Accordingly, we need not consider those claims." (citations omitted)).

Brooks did nothing to change that perception, including for most of the summary judgment stage. In its summary judgment motion and under the apparent belief that Brooks' only remaining theory of municipal liability was his custom-of-inaction theory, Erlanger argued the merits of that theory only. Brooks responded by asserting a ratification-by-a-final-decisionmaker theory but naming a different entity than the Board as the pertinent final decisionmaker. Brooks also filed a partial summary judgment motion of his own that articulated yet another entity, different from before and other than the Board, as the pertinent final decisionmaker. Once again, in response to those contentions, Erlanger used, *as a defense*, the fact that the Board is the relevant final decisionmaker. It was not until his reply to Erlanger's response to his own partial summary judgment motion that Brooks first argued that municipal liability was afforded specifically because the Board, as final decisionmaker, ratified the termination of his hospital privileges. But at this point, "[b]ecause the issue is fair notice, . . . [Brooks'] attempt to revive or resurrect [his ratification-by-the-Board theory of municipal liability] at summary judgment was too little too late." *Carter*, 561 F.3d at 568.

Like the plaintiff's deposition testimony in *Carter* that gave her employer reason to believe that she was not maintaining an FMLA claim based on events unfolding in 2005, *see id*. at 566–67, even "[a]ssuming that [Brooks'] complaint might reasonably be interpreted to put [Erlanger] on notice that" Brooks intended to proceed on a ratification-by-a-final-decisionmaker theory of municipal liability, *see id*. at 566, Erlanger simply had no reason to believe that Brooks intended to proceed on such a theory or the more specific ratification-by-the-Board theory after the motion to dismiss stage. Even more so than the three months passing between the plaintiff's deposition

testimony and the summary judgment stage in *Carter*, *see id*. at 568, almost nine months passed between the district court's opinion and order regarding Erlanger's motion to dismiss and the summary judgment stage. And as in *Carter*, Brooks had many options during that time by which to explicitly assert such a theory after it became clear at the motion to dismiss stage that both Erlanger and the district court believed Brooks to be proceeding on a custom-of-inaction theory of municipal liability only. *See id*.

True, after the district court permitted Brooks' initial counsel to withdraw shortly after the court's ruling on Erlanger's motion to dismiss, Brooks proceeded pro se in the case for almost the entirety of the time before the deadline for amending pleadings had passed, but Erlanger cannot be faulted for that. Additionally, once Brooks obtained new counsel and the deadline for amending pleadings had passed, he could have at least attempted to amend his complaint, arguing good cause for doing so existed in his initial counsel's purportedly deficient representation. *See Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) ("Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." (citation omitted)).

Instead, as in *Carter*, Brooks waited until after the discovery deadline had passed to assert (or arguably reassert if judged from his ambiguous operative complaint) his general ratification-by-a-final-decisionmaker theory of municipal liability. *See Carter*, 561 F.3d at 568–69. Even worse, Brooks waited until his *reply* to Erlanger's response to his own partial summary judgment motion to assert his specific ratification-by-the-Board theory, which also contradicted his naming of two other actors as the relevant final decisionmakers in his response to Erlanger's already-fully-briefed summary judgment motion, and in his own opening memorandum in his partial summary judgment motion. As in *Carter* then, "it would be unfair to allow [Brooks] to pursue a [theory]

that []he [essentially] disavowed and which did not otherwise come to light during the discovery period." *Id.* at 569; *see also Ryan v. Hazel Park*, 279 F. App'x 335, 339 (6th Cir. 2008) ("Generally, this Court has found that an issue raised for the first time in a reply to a response brief in the district court is waived." (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008))).

None of the arguments Brooks makes in support of his contention that he can proceed on his ratification-by-the-Board theory has merit. First, Brooks argues that "[t]he existence or nonexistence of Dr. Brooks' remaining claim is governed by the contents of the Amended Complaint" and that the operative complaint sufficiently informs Erlanger of Brooks' intent to proceed on a "final policymaker theory." But while the operative complaint is the place to start, it is not the ending point. For the reasons stated above, Brooks' ratification-by-a-final-decisionmaker theory of municipal liability was at best "ambiguous[,]" so the "course of the proceedings" must be evaluated to determine the scope of Brooks' complaint. *See Carter*, 561 F.3d at 568–69 (quoting *Harris v. Bornhorst*, 513 F.3d 503, 516 (6th Cir. 2008)). And, as outlined above, the course of proceedings did not provide Erlanger fair notice of Brooks' assertion of a ratification-by-the-Board theory of municipal liability.

Brooks also reasserts an argument he made to the district court in his motion to alter or amend its judgment: That the district court improperly merged Brooks' purportedly two distinct claims he asserted in his operative complaint—one for Erlanger's ignoring of his complaints of discrimination and one for the suspension of his hospital privileges. Brooks argues that the custom-of-inaction theory of municipal liability he asserted in his operative complaint pertained to that first aforementioned claim, while the ratification-by-a-final-decisionmaker theory of municipal liability pertained to the latter. So, he argues, he did not change his theory of municipal

liability because he always maintained this distinction from the start. But this argument assumes that Brooks, in fact, asserted and maintained a ratification-by-the-Board theory of municipal liability, which, as outlined above, cannot be said to be the case. Moreover, Brooks' operative complaint can just as easily be read to assert only one merged theory of liability—that Erlanger possesses a custom of inaction in responding to subordinates' termination of employees who allege racial discrimination. Because of that ambiguity, the course of proceedings must be evaluated, and when they are, they do not support Brooks' contention that he asserted and maintained a separate ratification-by-the-Board theory.

Finally, Brooks appears to suggest that Erlanger would not be prejudiced by allowing him to proceed on his ratification-by-the-Board theory of municipal liability at this stage of the case. More specifically, he appears to argue that because "[t]here is nothing that would have changed the[] undisputed fact[]" that the Board ratified Brooks' termination, discovery would not have revealed any evidence of consequence. Below, however, Erlanger relied on the purported rule in this Circuit that "even if it were shown that the [final decisionmaker] subsequently ratified the decision, the plaintiffs would then have to prove that the ratification was a 'moving force' in causing the constitutional violation." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 n.6 (6th Cir. 1993) (citing *Williams by Williams v. Ellington*, 936 F.2d 881, 883–85 (6th Cir. 1991)). Erlanger argued that "there is *no* evidence of record suggesting that the Board . . . ha[s] misapplied any policy related to physician privileges, staff membership, discipline, impairment, or any related matter in any fashion at any other time, including prior to the actions concerning Dr. Brooks." *See Ellington*, 936 F.2d at 884–85 ("There was no history that the policy had been repeatedly or even sporadically misapplied by school officials in the past. Consequently, the School Board cannot be

held liable for the ratification of the search in question, because this single, isolated decision can hardly constitute the 'moving force' behind the alleged constitutional deprivation.").

To refute Erlanger's use of *Feliciano* and *Ellington*, Brooks relies on *Meyers v. City of Cincinnati*, 14 F.3d 1115 (6th Cir. 1994). *Meyers* can at least arguably be read to suggest that the "moving force" component discussed in *Feliciano* and *Ellington* is not necessary to establish municipal liability based on a ratification-by-a-final-decisionmaker theory. *See id.* at 1117–19. Regardless, *Meyers* notes that "[i]f the authorized policymakers approve a subordinate's decision *and the basis for it*, their ratification would be chargeable to the municipality because their decision is final." *Id*. at 1118 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (emphasis added)); *see also Bryson v. City of Oklahoma City*, 627 F.3d 784, 790 (10th Cir. 2010) ("[A] municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions."). Here, the basis for the Board's ultimate ratification of the termination of Brooks' hospital privileges is unclear; the Board's minutes and resolution could be read to suggest that the Board ratified Brooks' termination simply because Brooks failed to avail himself of the available formal hearing process challenging the Board's subordinate's recommendation of termination. In other words, instead of approving of the merits of its subordinate's recommendation, the Board, at least arguably, could have terminated Brooks simply on the basis that he failed to challenge the subordinate's recommendation of termination. If that is true, then the Board arguably did not "ratif[y] . . . the basis for the[ subordinate's] actions." *See Bryson,* 627 F.3d at 790. Discovery could have been used to probe the Board's true basis for its ratification. Thus, it would be unfair at this stage of the case for the court to either (1) force Erlanger to defend against Brooks' ratification-by-the-Board theory without having had the opportunity to engage in the discovery it

seemingly would have or (2) extend the period for discovery and drag out this lawsuit "to allow [Brooks] to pursue a claim that [by all indications he] disavowed and which did not otherwise come to light during the discovery period." *Carter*, 561 F.3d at 569.

**AFFIRMED**.